[No. 66534-1-I.   Division One.   July 23, 2012.]

CAROLA WASHBURN ET AL., *Individually and on Behalf of the Estate of Baerbel K. Roznowski, Respondents*, v. THE CITY OF FEDERAL WAY, *Appellant*.

590

*Robert L. Christie* and *Thomas P. Miller* (of *Christie Law Group PLLC*), for appellant.

*John R. Connelly Jr.*, *James Lovejoy*, and *Nathan P. Roberts* (of *Connelly Law Offices*), for respondents.

*David J. Ward* on behalf of Legal Voice, amicus curiae.

*Alison Maria Romano Bettles* on behalf of Washington Women Lawyers, amicus curiae.

*Michael B. King*, *Stewart A. Estes*, and *Christopher W. Nicoll* on behalf of Washington Defense Trial Lawyers, amicus curiae.

¶1  Cox, J. — This is a wrongful death action arising from an act of domestic violence in which Paul Kim stabbed to death Baerbel Roznowski, his intimate partner, in her home. Kim murdered Roznowski shortly after a City of Federal Way police officer served Kim with a temporary protection order restraining him from either contacting Roznowski or being within 500 feet of her residence.

¶2  Unchallenged jury instructions become the law of the case.[1] Here, the City did not appeal the trial court's instruction regarding its police department's duty to exercise ordinary care in the service and enforcement of court orders. Likewise, there is a debate that we need not resolve whether the City properly excepted below to the instruction it did not appeal. A jury could rationally find from the

---

[1] *State v. Hickman*, 135 Wn.2d 97, 101-02, 954 P.2d 900 (1998); *Garcia v. Brulotte*, 94 Wn.2d 794, 797, 620 P.2d 99 (1980); *Chelan County Deputy Sheriffs' Ass'n v. County of Chelan*, 109 Wn.2d 282, 300 n.10, 745 P.2d 1 (1987); *State v. Lake*, 7 Wn. App. 322, 327, 499 P.2d 219, *review denied*, 81 Wn.2d 1006 (1972).

evidence in this record that the City breached its duty to Roznowski to enforce the protection order. Thus, the jury verdict stands to the extent of liability and damages in favor of Roznowski's estate.

¶3 The City claims that the trial court erroneously denied its first summary judgment motion. We do not generally review an order denying summary judgment after a case goes to trial.[2] Here, there were material factual issues prior to trial, and the denial of the City's first motion for summary judgment did not turn solely on a substantive issue of law. Accordingly, we do not review the denial of this summary judgment motion.

¶4 The City also claims that the court erroneously denied its Civil Rule 50(a) motion for judgment as a matter of law at the end of the plaintiff's case-in-chief.[3] In order to lay a foundation for appeal, the City was required to either renew its motion pursuant to CR 50(b) or move for a new trial, claiming insufficiency of evidence to support the verdict.[4] Here, the City did neither. Accordingly, we do not review the trial court's denial of the CR 50(a) motion at the close of the plaintiff's case-in-chief.

¶5 Finally, the trial court properly exercised its discretion by granting the motion for a new trial on damages to Roznowski's daughters, Carola Washburn and Janet Loh (collectively Washburn). We affirm the judgment on the verdict to the extent of liability and damages to Roznowski's estate and also affirm the grant of a new trial on Washburn's damages.[5]

---

[2] *Kaplan v. Nw. Mut. Life Ins. Co.*, 115 Wn. App. 791, 799-800, 65 P.3d 16 (2003), *review denied*, 151 Wn.2d 1037 (2004); *see also Univ. Vill. Ltd. Partners v. King County*, 106 Wn. App. 321, 324, 23 P.3d 1090 (2001).

[3] Brief of Appellant City of Federal Way at 24-25.

[4] *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 399-401, 126 S. Ct. 980, 163 L. Ed. 2d 974 (2006).

[5] Washburn moved to strike the City's late filing of its "Amended Response to Brief of Amici Curiae Legal Voice and Washington Women Lawyers." We grant the motion in part and do not consider any new material in the City's amended brief.

¶6 Kim and Roznowski were intimate partners. Each had a separate residence, but Kim spent most of his time living at Roznowski's home in Federal Way.

¶7 The relationship between the two grew increasingly troubled. Several days before the events that gave rise to this action, Roznowski called 911 to report a verbal domestic situation. The police reported that Roznowski and Kim had calmed down prior to their arrival and neither of them showed any signs of injury. Nevertheless, in accordance with the City police's protocol for domestic disturbance calls, an officer left a domestic violence booklet with Roznowski. The officer also explained to Roznowski that she could obtain an antiharassment order.

¶8 Days after this incident, Roznowski contacted a domestic violence advocate working at the King County Prosecutor's Office located in the Norm Maleng Regional Justice Center. After consultation with the advocate, Roznowski sought a protection order from the superior court to restrain Kim from being in her home or near her. She completed the paperwork herself and presented it for consideration by a court commissioner on May 1, 2008. The paperwork included a "Petition for an Order for Protection-AH" and a proposed "Temporary Protection Order and Notice of Hearing-AH."[6]

¶9 Roznowski's affidavit supporting her petition for the protection order identified Kim as the person from whom she sought protection and identified him as her "boyfriend." The affidavit also stated, among other things, that his most recent acts included:

> 4/30 verbal attacks by Paul Kim because I moved wood to clean yard. He is vehement about owning this pile of wood along with a stack, 10' W x 6' H along the fence, as well as misc. supplies on side of fence. I gave him notice that I'll [sic] plan to move 2 years ago. Nothing was done.
>
> . . . .

---

[6] Plaintiff's Trial Exhibit 2.

4/29 verbal attacks about same subject. He won't commit when he'll remove items and personal belongings in crawl space. I can't put house on market for sale until done. He deliberately stalls, and the repeated answer is it takes time. . . . Paul Kim's residence is at 331 S 1st . . . Federal Way but stays at [Roznowski's] home. He has violent, verbal, insulting outbursts.

. . . .

Last year [Kim's] outburst frightened me, I called 911, he came close to hitting me. He left my place as promised. Within 15 min. I received several calls from him. I changed the locks except for one door.

He is capable of physical violence. I witnessed him beating his oldest son in the past. In his present state of mind he can easily retaliate with [sic] me.[7]

¶10 A court commissioner entered Roznowski's proposed temporary protection order. By its plain terms, it restrained Kim "from making any attempts to contact" Roznowski.[8] It also restrained him "from entering or being within 500 feet" of her residence.[9] The order also stated a return date of May 14, 2008, at 8:30 a.m. for a hearing on the issuance of a permanent protection order.

¶11 Roznowski then delivered copies of her petition and the temporary protection order to the City's police department for service on Kim.[10] At the police department, she completed and submitted an additional document called a Law Enforcement Information Sheet (LEIS).[11]

---

[7] *Id.* at 7.

[8] *Id.* at 4.

[9] *Id.*

[10] RCW 10.14.100(2) provides, "The sheriff of the county or the peace officers of the municipality in which the respondent resides shall serve the respondent personally unless the petitioner elects to have the respondent served by a private party."

[11] Plaintiff's Trial Exhibit 2, at 4.

¶12 The LEIS states at the top of the form:

*Do NOT serve or show this sheet to the restrained person! Do NOT FILE in the court file.* **Give this form to law enforcement.**[12]

¶13 Below the above directives in the LEIS, Roznowski provided additional information about Kim to the police. She stated that an interpreter who spoke Korean would be needed to serve Kim.[13] She provided his residence address but further specified that he could be served at her residence address.[14]

¶14 Under the portion of the LEIS seeking "Hazard Information" about Kim, Roznowski checked the box marked "Assault."[15] The LEIS also states that Kim is a "current or former cohabitant as an intimate partner" and that Roznowski and Kim are "living together now."[16] The LEIS states further that Kim did not know that he would be "moved out of the home."[17] The LEIS also states that Kim did not know that she was obtaining the protection order.[18]

¶15 Significantly, Roznowski also stated in the LEIS that Kim was "likely to react violently when served."[19]

¶16 Early in the morning of May 3, 2008, Officer Andrew Hensing of the City's police department picked up a folder at police headquarters in order to perform the service of the protection order on Kim that Roznowski sought. The folder included Roznowski's affidavit and petition for a protection order, the temporary protection order entered by the com-

---

[12] *Id.* at 2 (emphasis added).

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

missioner, and the LEIS that we described earlier in this opinion.[20]

¶17 Around 8:00 a.m. that morning, Officer Hensing arrived near Roznowski's residence and parked his vehicle. He testified at trial that he did not completely read the papers in the folder prior to serving Kim.[21] Thus, he was then unaware of the information about Kim contained in the LEIS and in Roznowski's affidavit supporting her petition for a protection order. It appears that he did not read the information in the LEIS stating that a Korean interpreter would be needed because there was no interpreter with the officer.

¶18 Officer Hensing testified at trial that he knocked at the front door of Roznowski's home, and Kim answered.[22] Officer Hensing asked Kim to identify himself.[23] The officer then served the order on Kim. According to the officer, a brief conversation between the two followed.

¶19 Officer Hensing testified that he told Kim that he had been served with an antiharassment order and that there was a hearing date stated in the order.[24] He asked Kim if he could read English and told Kim to read the order, which he testified that Kim then did.[25] Officer Hensing also testified that he asked Kim if he had any questions.[26]

¶20 Officer Hensing testified that he "saw someone in the background" during the exchange with Kim at the door of Roznowski's home but did not know whether the person

---

[20] Report of Proceedings (Dec. 9, 2010) at 6-7.

[21] *Id.* at 13-14.

[22] *Id.* at 36.

[23] *Id.* at 37-38.

[24] *Id.* at 38-39.

[25] *Id.* at 36, 39.

[26] *Id.* at 38-39.

"was male or female."[27] He did not inquire further and returned to his parked vehicle. There, he completed the return of service form. The entire interaction with Kim took about five minutes and was completed by 8:13 a.m.[28] Officer Hensing left the scene without taking any further action.

¶21 The evidence at trial showed that Kim remained at Roznowski's residence after Officer Hensing departed. This was notwithstanding the protection order's direction that Kim was restrained from either entering or being within 500 feet of the residence or from contacting Roznowski.

¶22 Less than an hour after Officer Hensing served Kim, Roznowski sent an e-mail message to her daughter, Carola Washburn. She wrote:

> Well—[Kim] was served this morning. He doesn't understand a thing and right away the blame came I am making trouble. . . . I gave him until 11 to move stuff, then I'll get the key and garage door opener.[29]

¶23 Kim called a friend and asked him to come over. Kim left the house with his friend for a brief period to go to a bank. He withdrew funds, gave them to the friend, and asked that the friend give the funds to his nephew. The friend then drove Kim back to Roznowski's residence.

¶24 The friend became concerned about Kim based on his actions and statements during the trip to the bank. The friend contacted police with these concerns. Police responded by going to Roznowski's house. They arrived at 11:55 a.m.[30]

¶25 Police discovered that Kim, in the ultimate act of domestic violence, had stabbed Roznowski 18 times with a knife. She died of her wounds at the scene of the crime.

---

[27] *Id.* at 39.

[28] *Id.* at 21; Plaintiff's Trial Exhibit 2, at 9.

[29] Plaintiff's Exhibit 50.

[30] Report of Proceedings (Dec. 8, 2010) at 8.

¶26 Washburn, individually and on behalf of Roznowski's estate, commenced this wrongful death action against the City. The two daughters alleged negligence, negligent infliction of emotional distress, and negligent supervision and training on the part of the City. The City denied liability, asserting that the public duty doctrine was a bar to all claims.

¶27 The City's first motion for summary judgment was based solely on the defense that the public duty doctrine barred all claims. The trial court denied the motion and the motion to reconsider.

¶28 The City sought discretionary review of the denial of its summary judgment motion. A commissioner of this court denied review, and a panel of judges denied the City's motion to revise that ruling.

¶29 The City's theory of the case at trial was that the public duty doctrine was a bar to all claims. The City took the position that Roznowski's choice to seek protection from Kim by way of an antiharassment protection order pursuant to chapter 10.14 RCW rather than a protection order under chapter 26.50 RCW relieved the City of any duty to her other than to serve the order and complete and file the return of service.

¶30 In *Donaldson v. City of Seattle*,[31] this court held that police officers have a mandatory duty to arrest alleged abusers if there are legal grounds to do so under the domestic violence protection act, chapter 10.99 RCW. Thus, here the City implicitly concedes that this case should have gone to trial if Roznowski had obtained the "right" form or order, rather than the "wrong" one.

¶31 Washburn disagreed with the City's contentions at trial. She argued that the City had a duty to enforce the protection order entered by the court on May 1, 2008. For various reasons, Washburn claimed that the public duty doctrine did not bar the claims.

---

[31] 65 Wn. App. 661, 669-71, 831 P.2d 1098 (1992).

¶32 At the close of Washburn's case-in-chief and prior to presenting its own case, the City moved for judgment as a matter of law, as provided for by CR 50(a).[32] The trial court denied this motion.

¶33 The jury returned a $1.1 million verdict solely in the estate's favor. It did not award any damages to either of Roznowski's daughters, individually. The court entered judgment on the verdict.

¶34 The City neither renewed its CR 50(a) motion pursuant to CR 50(b) nor moved for a new trial pursuant to CR 59. Washburn moved for a new trial solely on damages. The trial court granted Washburn's motion.

¶35 The City appeals.

## LAW OF THE CASE

¶36 A primary issue on appeal centers on the effect of the City's alleged failure to object to the substance of the trial court's instruction 12, and its failure either to assign error to the instruction or to argue on appeal that giving the instruction was improper. This instruction states the City's duty to exercise ordinary care in the service and enforcement of protection orders. As Washburn correctly argues, this instruction constitutes the law of the case. Thus, the only question on appeal is whether there is sufficient evidence to sustain the verdict under the instructions given.[33]

¶37 We hold that instruction 12 is the law of the case. Additionally, there was sufficient evidence for the jury to

---

[32] Clerk's Papers at 2049-59.

[33] *Hickman*, 135 Wn.2d at 101-03 (citing *Tonkovich v. Dep't of Labor & Indus.*, 31 Wn.2d 220, 225, 195 P.2d 638 (1948)); *see also Noland v. Dep't of Labor & Indus.*, 43 Wn.2d 588, 590, 262 P.2d 765 (1953) ("No assignments of error being directed to any of the instructions, they became the law of the case on this appeal, and the sufficiency of the evidence to sustain the verdict is to be determined by the application of the instructions and rules of law laid down in the charge."); *Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 917, 32 P.3d 250 (2001) ("Instructions to which no exceptions are taken become the law of the case." (citing *Ralls v. Bonney*, 56 Wn.2d 342, 343, 353 P.2d 158 (1960))); *Chelan County Deputy Sheriffs' Ass'n*, 109 Wn.2d at 300 n.10.

find that the City breached its duty to Roznowski, as defined by the instruction.

¶38 Under the law of the case doctrine, instructions given to the jury by the trial court, if not objected to, shall be treated as the properly applicable law.[34] *State v. Hickman*[35] is particularly instructive in the application of that doctrine to this case.

¶39 There, the defendant was tried for insurance fraud in Snohomish County Superior Court.[36] The information charged him with presenting, or causing to be presented, in Snohomish County, a false or fraudulent insurance claim.[37] The to-convict instruction at trial specified the elements of the crime of insurance fraud but added an additional element: that the act occurred in Snohomish County, Washington.[38] The State did not object to this added element.[39] The jury returned a guilty verdict.[40]

¶40 Hickman appealed, arguing that the State assumed the burden to prove that the act occurred in Snohomish County and failed to do so.[41] This court rejected Hickman's argument and affirmed.[42] The supreme court granted review and reversed.

¶41 In discussing the law of the case doctrine, the supreme court stated that it is "an established doctrine with

---

[34] *Hickman*, 135 Wn.2d at 102-03; *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 113, 829 P.2d 746 (1992).

[35] 135 Wn.2d 97, 954 P.2d 900 (1998).

[36] *Id.* at 99.

[37] *Id.* at 100-01.

[38] *Id.* at 101.

[39] *Id.* at 100-01.

[40] *Id.* at 101.

[41] *Id.*

[42] *State v. Hickman*, 84 Wn. App. 646, 929 P.2d 1155 (1997).

roots reaching back to the earliest days of statehood."[43] The court cited an 1896 decision in which it held that " 'whether the instruction in question was rightfully or wrongfully given, it was binding and conclusive upon the jury, and constitutes upon this hearing the law of the case . . . .' "[44] Accordingly, the *Hickman* court observed that the question is whether there is " 'sufficient evidence to sustain the verdict under the instructions of the court?' "[45]

¶42 Applying these principles, the *Hickman* court examined the sufficiency of the evidence of the additional element—" '[t]hat the act occurred in Snohomish County, Washington' "—and determined the evidence was insufficient.[46] Despite the fact that venue is not an element of the crime of insurance fraud that the State must generally prove, *Hickman* held that venue became the law of the case that the State was required to prove because it failed to object to the instruction.[47] Because there was insufficient evidence of the added element, the court reversed and dismissed Hickman's conviction.[48]

¶43 The holding of *Garcia v. Brulotte*[49] demonstrates that the law of the case doctrine is not limited to criminal cases. In *Garcia*, there was a lack of agreement among the jurors on the amount of damages and percentage of plaintiff's negligence.[50] "[Ten] jurors agreed on the amount of damages, and 10 jurors agreed on the percentage of plain-

---

[43] *Hickman*, 135 Wn.2d at 101.

[44] *Id.* at 101 n.2 (alteration in original) (quoting *Pepperall v. City Park Transit Co.*, 15 Wash. 176, 180, 45 P. 743, 46 P. 407 (1896)).

[45] *Id.* at 103 (quoting *Schatz v. Heimbigner*, 82 Wash. 589, 590, 144 P. 901 (1914)).

[46] *Id.* at 101, 105-06 (emphasis omitted).

[47] *Id.* at 102 (quoting *State v. Lee*, 128 Wn.2d 151, 159, 904 P.2d 1143 (1995)).

[48] *Id.* at 106.

[49] 94 Wn.2d 794, 620 P.2d 99 (1980).

[50] *Id.* at 796.

tiff's negligence, but each was a different set of 10."[51] Nevertheless, because the verdict was consistent with the court's jury instructions, the supreme court held that the verdict was consistent with the law of the case.[52] In doing so, the supreme court acknowledged that the trial court's verdict instruction might be improper, stating that "[i]n the appropriate case the issues raised by an interpretation of the statute, court rules, and Washington precedent will be necessary to determine if the court's verdict instruction here was correct . . . ."[53] But in *Garcia*, the law of the case prevented review of that legal question.

¶44 Here, the court and counsel for the parties extensively discussed whether a duty of care instruction should be given to the jury. Near the end of this discussion, and prior to counsel stating their exceptions, the following exchange occurred:

> COURT: So the way I'm going to word it, unless someone has anything you want to say is, *"A city police department has to exercise ordinary care . . . in the service and enforcement of court orders*," period, because that's really all we are talking about.
>
> MR. CHRISTIE: For the way you are presenting the case, I think that's appropriate. *I will take exception for other reasons.*[54]

¶45 Following this exchange, the court assembled its final set of instructions. Instruction 12 stated:

> A city police department has a duty to exercise ordinary care in the service and enforcement of court orders.[56]

¶46 The parties then stated their respective exceptions to the court's instructions to the jury:

---

[51] *Id.*

[52] *Id.* at 797.

[53] *Id.*

[54] Report of Proceedings (Dec. 20, 2010) at 73-74 (emphasis added).

[55] Clerk's Papers at 2179.

MR. CHRISTIE: . . . [W]e would take exception to the Court giving . . . instruction 12. . . . [I]nstruction 12 is a statement of the City's duty to exercise ordinary care for the reasons set forth before. Given that we are talking about a failure to enforce exception, we think it should be done in the manner that we have proposed by instructing on the elements and then asking specific questions.[56]

¶47 Whether the City's exception to instruction 12 complies with the requirements of CR 51(f) is debatable. That court rule states:

Objections to Instruction. Before instructing the jury, the court shall supply counsel with copies of its proposed instructions which shall be numbered. Counsel shall then be afforded an opportunity in the absence of the jury to make objections to the giving of any instruction and to the refusal to give a requested instruction. *The objector shall state distinctly the matter to which he objects and the grounds of his objection, specifying the number, paragraph or particular part of the instruction to be given or refused and to which objection is made.*[57]

It is unclear from this record whether the City's objection is anything more than an objection to the wording of the instruction, as there is no further specific explanation here of the basis of any substantive concerns of the City.

¶48 We acknowledge that the City's position below and on appeal has been that this case should have been dismissed without reaching the stages of crafting and giving instructions to the jury. But the case did result in a trial, and in instructions to the jury. Our reading of the City's only exception to Instruction 12 is that it objected to the wording only, and not to its substance.

¶49 In its motion for reconsideration of our original decision in this case, the City essentially argues that it is not debatable whether it properly excepted to instruction

---

[56] Report of Proceedings (Dec. 20, 2010) at 80-81.

[57] (Emphasis added and boldface omitted.)

12, as CR 51(f) requires.[58] The City points to portions of the record other than what we cited above to show that instruction 12 is not the law of the case.[59]

¶50 We duly considered these additional citations to the record that the City provides and the authorities that both sides cite on the question. We adhere to our original conclusion that instruction 12 is the law of the case.

¶51 Relying chiefly on *Falk v. Keene Corp.*,[60] the City argues that its exception to the court's failure to give the City's proposed instruction 18 as well as other of its proposals was sufficient to apprise the court of its concerns. Washburn does not challenge the rule stated in *Falk* but argues that the rule does not control in this case. We agree with *Falk* but need not resolve the debate between the parties whether the City properly excepted to instruction 12 in this case.

■ ¶52 As we stated in our original decision, the City neither assigned error to this instruction on appeal nor otherwise argues on appeal that giving it was improper. In fact, the City states in its reply brief that its failure to designate

> Jury Instruction 12 . . . is immaterial. Because the trial court erred in ruling that the City owed [the] plaintiffs a duty of care to take enforcement action and protect Ms. Roznowski from harm, it was erroneous to give *any* instructions to a jury. The case should have been dismissed as a matter of law and never reached the instruction stage, the central argument made on summary judgment, on reconsideration, and at the close of plaintiffs' case in chief.[61]

¶53 We disagree with the City's view, as expressed in this briefing. On appeal, the City does not challenge either

---

[58] Appellant City of Federal Way's Motion for Reconsideration at 7-11.

[59] Clerk's Papers at 606, 1981, 2070; Report of Proceedings (Dec. 20, 2010) at 79-80.

[60] 113 Wn.2d 645, 782 P.2d 974 (1989).

[61] Reply Brief of Appellant City of Federal Way at 4 n.2.

the substance or the wording of the instruction in any way. It plainly states that it is unnecessary to do so.

¶54 The reason that we need not decide whether the City properly excepted below to instruction 12 is that the City does not challenge this instruction on appeal. There is no dispute on this point.

¶55 Both the supreme court and this court have consistently held that under these circumstances the failure to appeal an allegedly erroneous instruction makes that instruction the law of the case.[62] Application of that well-settled principle to this case makes clear that instruction 12 is now the law of the case for the City's duty to exercise ordinary care in the service and enforcement of the protection order that is at issue in this case. Assuming without deciding that the City properly excepted to instruction 12 below, its failure to challenge the instruction on appeal makes the instruction the law of the case.

¶56 *Tonkovich v. Department of Labor & Industries*, the other primary case on which the City relies, does not require a different result.[63] That was a case in which the supreme court addressed whether there was sufficient evidence to support the granting of a motion for judgment notwithstanding the verdict.[64] The City chiefly relies on the following quotation from that case to argue that the law of the case doctrine does not control here:

> [The law of the case rule] does not apply if the record or evidence conclusively shows that the party in whose favor the verdict is rendered is not entitled to recover. No man should be

---

[62] *Chelan County Deputy Sheriffs' Ass'n*, 109 Wn.2d at 300 n.10 (failure to assign error to an instruction makes the instruction the law of the case); *Lake*, 7 Wn. App. at 327 (failure to assign error on appeal to an instruction challenged below makes that instruction the law of the case); *see Detonics ".45" Assocs. v. Bank of Cal.*, 97 Wn.2d 351, 353, 644 P.2d 1170 (1982) (failure to appeal the trial court's legal ruling on preemption makes that ruling the law of the case).

[63] 31 Wn.2d 220, 225, 195 P.2d 638 (1948).

[64] *Id.* at 223.

allowed to recover in any case unless there is evidence to support his contention.[65]

¶57 We are not persuaded by this quotation that we should refrain from applying the well-settled rule of the law of the case here. First, the quotation is not supported by any citation to authority. Second, the case does not discuss any of the many cases that do apply the law of the case doctrine to cases that are undistinguishable from this one.

¶58 Because this instruction is now the law of the case, the only remaining question is whether there was sufficient evidence to support the jury verdict. We hold that there was sufficient evidence for a jury to find that the City breached the duty stated in this instruction. Whether instruction 12 is a legally correct statement of the duty owed by a City police department, an instruction that can or should be given in future cases, is a question that we do not decide in this case.

¶59 We review jury verdicts under a sufficiency of the evidence standard.[66] "The record must contain a sufficient quantity of evidence to persuade a rational, fair-minded person of the truth of the premise in question."[67] A party challenging the sufficiency of the evidence admits the truth of the opposing party's evidence and all inferences that can be reasonably drawn therefrom.[68] Such a challenge requires that the " 'evidence be interpreted most strongly against the moving party and in the light most favorable to the party against whom the motion is made.' "[69]

---

[65] *Id.* at 225.

[66] *Winbun v. Moore*, 143 Wn.2d 206, 213, 18 P.3d 576 (2001).

[67] *Canron, Inc. v. Fed. Ins. Co.*, 82 Wn. App. 480, 486, 918 P.2d 937 (1996) (citing *Bering v. Share*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986)).

[68] *Holland v. Columbia Irrigation Dist.*, 75 Wn.2d 302, 304, 450 P.2d 488 (1969).

[69] *Id.* (internal quotation marks omitted) (quoting *Hellriegel v. Tholl*, 69 Wn.2d 97, 98, 417 P.2d 362 (1966)).

¶60 Here, there was sufficient evidence for the jury to find that Officer Hensing, as an agent of the City, breached a duty by failing to exercise ordinary care in the *enforcement* of the court order he served on Kim. He failed to read the LEIS Roznowski provided that was designed to alert law enforcement of the situation to be faced when serving Kim with the protection order. That information included the fact that Kim was to be served at Roznowski's residence. Moreover, it expressly stated that an interpreter who spoke Korean would be needed to ensure Kim understood the provisions of the protection order. The LEIS clearly stated under its "Hazard Information" section that Kim's history included assault. Finally, the LEIS also provided additional information that indicated the domestic relationship of Kim and Roznowski and that he was "likely to react violently when served."

¶61 The temporary protection order also contained additional information that Officer Hensing failed to read. Specifically, the order restrained Kim "from making any attempts to contact [Roznowski]" and further restrained him from "entering or being within 500 feet of [Roznowski's] residence." Despite these express directives, both of which Kim violated upon being served, Officer Hensing did nothing to enforce them. Regardless of whether enforcement would have entailed either staying until Kim left Roznowski's residence or arresting him if he failed to do so, Officer Hensing failed to enforce the express provisions of the superior court's order that were intended to protect Roznowski from harm.

¶62 There was also expert testimony that the point of separation in a domestic situation could escalate to violence where an alleged abuser is separated from an alleged victim by way of a court order. That evidence supports what happened in this case: Once Kim understood that he was to leave Roznowski's residence and have no further contact with her, his behavior escalated into deadly violence.

¶63 We conclude that this evidence was sufficient to persuade a rational, fair-minded juror that the City breached

its duty to Roznowski by failing to enforce the order that Officer Hensing served on Kim. This supports the jury verdict to the extent of liability and damages in favor of Roznowski's estate.

¶64 The City maintains that it did not owe any legal duty of care and all claims are barred by the public duty doctrine.[70] It characterizes Washburn's law of the case argument as a procedural red herring that is intended to distract this court from the merits of its appeal.[71] We must disagree.

¶65 As we have explained, the law of the case doctrine is well established. The City cites to a number of cases that hold that "technical violation of the rules will not ordinarily bar appellate review," where the nature of the challenge is clear.[72] But none of the cases the City cites address the failure of a party to object substantively to or appeal a trial court's jury instruction. Thus, the City fails to advance any argument why we should not apply the law of the case doctrine here. Moreover, it fails to explain why the evidence is insufficient to support the jury verdict on the basis of instruction 12, which is the law of the case. Accordingly, we are unpersuaded by the City's arguments to the contrary.

## DENIAL OF SUMMARY JUDGMENT MOTION

■ ¶66 The City primarily argues that the trial court erroneously denied its first motion for summary judgment, which it based on the public duty doctrine. At the time of this motion, exceptions to the public duty doctrine were available theories of the plaintiffs. There were then genuine

---

[70] Reply Brief of Appellant City of Federal Way at 9-12.

[71] *Id.* at 5-6.

[72] *Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 710, 592 P.2d 631 (1979); *see also State v. Clark*, 53 Wn. App. 120, 123, 765 P.2d 916 (1988) (where Rules of Appellate Procedure not strictly followed regarding assignments of error, if claimed errors are clear, then review is proper); *McGovern v. Smith*, 59 Wn. App. 721, 734, 801 P.2d 250 (1990) (where party fails to make proper assignment of error, court may still consider the merits of the challenge where its nature is clear).

issues of material fact whether such exceptions applied. Because such genuine issues of material fact existed at the time of the City's motion for summary judgment, and because the matter proceeded to trial, we decline to review the denial of the motion.

¶67 Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[73] An appellate court reviews de novo a grant or denial of summary judgment.[74] Such an order is subject to review "if the parties dispute no issues of fact and the decision on summary judgment turned solely on a substantive issue of law."[75] But as we noted in *Kaplan v. Northwestern Mutual Life Insurance Co.*,[76] " '[a] summary judgment denial cannot be appealed following a trial if the denial was based upon a determination that material facts are disputed and must be resolved by the factfinder.' "

¶68 Here, the City's first motion for summary judgment was based solely on the theory that the public duty doctrine barred all claims in this wrongful death action. The trial court denied the motion on the basis that there were genuine issues of material fact for trial.

¶69 The City sought discretionary review of the denial of summary judgment. A commissioner of this court denied discretionary review, stating that "the legislative intent and special relationship exceptions arguably apply."[77] The rul-

---

[73] CR 56(c).

[74] *Green v. A.P.C.*, 136 Wn.2d 87, 94, 960 P.2d 912 (1998) (citations omitted).

[75] *Univ. Vill.*, 106 Wn. App. at 324; *Kaplan*, 115 Wn. App. at 799-800.

[76] 115 Wn. App. 791, 799-800, 65 P.3d 16 (2003) (quoting *Brothers v. Pub. Sch. Emps. of Wash.*, 88 Wn. App. 398, 409, 945 P.2d 208 (1997) and citing *Johnson v. Rothstein*, 52 Wn. App. 303, 304, 759 P.2d 471 (1988)), *review denied*, 151 Wn.2d 1037 (2004).

[77] Clerk's Papers at 751 (Commissioner's Ruling Denying Discretionary Review).

ing went on to explain why the then existing record arguably supported these alternative arguments.[78] A panel of judges of this court denied the City's motion to revise that ruling.

¶70 We may not review a denial of summary judgment following a trial if the denial was based upon a determination that material facts were in dispute and had to be resolved by the fact finder. The rule stated in *Kaplan* bars review of the denial of the City's first motion for summary judgment following the trial in this case. There were material factual issues that existed at the time of the first motion for summary judgment. Specifically, there were material factual issues whether the special relationship exception to the public duty doctrine applied to this case. This is so even if we concluded that the legislative intent exception to this doctrine did not involve material factual issues. There were material facts in dispute at the time of the first motion, facts that only a trial could resolve after further development of the record.

¶71 The City argues that because its negligence was Washburn's sole contention, the only question before the lower court at the time of the first summary judgment motion was legal: whether the City owed Roznowski a duty of care.[79]

¶72 "In all negligence actions the plaintiff must prove the defendant owed the plaintiff a duty of care."[80] Whether a duty is owed is a question of law.[81] But duty arises from the facts presented.[82] To determine whether a defendant owes a duty to the plaintiff, appellate courts have frequently reviewed whether sufficient evidence supports a

[78] *Id.* at 758-60.

[79] Reply Brief of Appellant City of Federal Way at 7.

[80] *Donaldson*, 65 Wn. App. at 666.

[81] *Munich v. Skagit Emergency Commc'ns Ctr.*, 161 Wn. App. 116, 121, 250 P.3d 491, *review granted*, 172 Wn.2d 1026 (2011).

[82] *Torres v. City of Anacortes*, 97 Wn. App. 64, 75, 981 P.2d 891 (1999).

finding that the alleged duty was owed in the particular circumstances of the case.[83] Thus, a challenge to whether the defendant owes a duty to a plaintiff sometimes requires a determination whether facts can be proved that give rise to the alleged duty. In such cases, the issue of duty does not present a pure question of law.

¶73 Here, whether the City owed Roznowski a particularized duty as opposed to a general duty of care could not have been determined at the time of the first motion for summary judgment because the material facts were disputed. We reject the City's overly simplistic characterization that only a legal question existed.

¶74 For these reasons, we do not review the denial of the City's first summary judgment motion.

## DENIAL OF MOTION FOR JUDGMENT AS A MATTER OF LAW

¶75 The City also argues that the trial court erroneously denied its CR 50(a) motion at the close of Washburn's case-in-chief. Washburn responds that we may not review that denial because the City failed to renew its motion, as provided under CR 50(b). Nor did the City move for a new trial based on insufficient evidence. We agree with Washburn.

¶76 The Federal Rules of Civil Procedure (FRCP), on which the state Superior Court Civil Rules are modeled, allow a party to challenge the sufficiency of the evidence prior to the submission of the case to the jury under FRCP

---

[83] *Yankee v. APV N. Am., Inc.*, 164 Wn. App. 1, 3-10, 262 P.3d 515 (2011) ("there is insufficient evidence to create a material issue of fact that APV had a duty to warn of asbestos exposure"); *Borden v. City of Olympia*, 113 Wn. App. 359, 370, 53 P.3d 1020 (2002) ("These facts are sufficient to support a finding that the City actively participated in the 1995 project, and, if such a finding is made, that the City owed a duty of due care."); *Moore v. Wayman*, 85 Wn. App. 710, 720-21, 723, 725-26, 934 P.2d 707 (1997) (reversing plaintiff's negligence verdict because evidence was insufficient to support applicability of special relationship, failure to enforce, and legislative intent exceptions to the public duty doctrine).

50(a). Such a motion may be renewed after the verdict and entry of judgment under FRCP 50(b).[84]

¶77 In *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*,[85] the United States Supreme Court addressed the implications of a party's failure to move postverdict under FRCP 50(b) after denial of an initial FRCP 50(a) motion. The Court noted that " '[i]n the absence of such a motion,' " an " 'appellate court [is] without power to direct the District Court to enter a judgment contrary to the one it had permitted to stand.' "[86] The Court cited a 1947 case in support of this proposition.[87] According to the Court, a postverdict motion is necessary because

> "[d]etermination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart." Moreover, the "requirement of a timely application for judgment after verdict is not an idle motion" because it "is . . . an essential part of the rule, firmly grounded in principles of fairness."[88]

¶78 In *Ortiz v. Jordan*,[89] the United States Supreme Court recently reiterated its holding in *Unitherm*. There, the Court noted that "although purporting to review the District Court's denial of the . . . pretrial summary-judgment motion, several times [the Court of Appeals] pointed to evidence presented only at the trial stage of the proceed-

---

[84] FRCP 50(a), (b).

[85] 546 U.S. 394, 126 S. Ct. 980, 163 L. Ed. 2d 974 (2006).

[86] *Id.* at 400-01 (alterations in original) (quoting *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 218, 67 S. Ct. 752, 91 L. Ed. 849 (1947) and citing *Globe Liquor Co. v. San Roman*, 332 U.S. 571, 68 S. Ct. 246, 92 L. Ed. 177 (1948)).

[87] *Id.*

[88] *Id.* at 401 (alterations in original) (citation omitted) (quoting *Cone*, 330 U.S. at 216; *Johnson v. N.Y., New Haven & Hartford R.R.*, 344 U.S. 48, 53, 73 S. Ct. 125, 97 L. Ed. 77 (1952)).

[89] ___ U.S. ___, 131 S. Ct. 884, 892, 178 L. Ed. 2d 703 (2011).

ings."[90] According to the Court, "[o]nce the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary judgment motion."[91]

¶79 But the fatal flaw, according to the Supreme Court, was that the *Ortiz* appellants failed to renew their motion, as FRCP 50(b) specifies. This failure "left the appellate forum with no warrant to reject the appraisal of the evidence by 'the judge who saw and heard the witnesses and ha[d] the feel of the case which no appellate printed transcript can impart.' "[92]

¶80 When a Washington Court Rule is substantially similar to a present Federal Rule of Civil Procedure, we may look to federal decisions interpreting this rule for guidance.[93] We do so here.

¶81 The language of FRCP 50(b) is virtually identical to CR 50(b).[94] Karl Tegland states the necessity for

---

[90] *Id.* at 889 (citation omitted).

[91] *Id.*

[92] *Id.* (alteration in the original) (quoting *Cone*, 330 U.S. at 216).

[93] *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 218-19, 829 P.2d 1099 (1992) (citing *In re Guardianship of Lasky*, 54 Wn. App. 841, 851, 776 P.2d 695 (1989); *Am. Disc. Corp. v. Saratoga W., Inc.*, 81 Wn.2d 34, 37, 499 P.2d 869 (1972)).

[94] FRCP 50(b) states:

**Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
    (1) allow judgment on the verdict, if the jury returned a verdict;
    (2) order a new trial; or
    (3) direct the entry of judgment as a matter of law.
CR 50(b) states:

**Renewing Motion for Judgment After Trial; Alternative Motion for New Trial.** If, for any reason, the court does not grant a motion for judgment

either renewing a CR 50(a) motion or moving for a new trial as a foundation for an appeal:

> **Foundation for appeal.** A party may not simply move for judgment as a matter of law before the case is submitted to the jury pursuant to CR 50(a), and then (if the motion is denied) appeal from the final judgment on the basis of insufficient evidence. In order to lay a foundation for appeal, the party must first renew its motion for judgment as a matter of law pursuant to CR 50(b) or, in the alternative, move for a new trial based upon insufficient evidence. This requirement is based upon the belief that in the post-verdict context (CR 50(b)), the trial court should make the initial determination of whether the evidence was sufficient to support the verdict. The determination should not be made in the first instance by an appellate court.[95]

¶82 Tegland also cites to *Unitherm* and notes that in its analysis of FRCP 50, the Supreme Court had interpreted language virtually identical to the language of CR 50. Thus, because of the similarity of CR 50(b) and FRCP 50(b), the rationale of the Supreme Court's holding in *Unitherm* also applies to CR 50.

¶83 Here, the City neither renewed its CR 50(a) motion pursuant to CR 50(b) nor moved for a new trial based on insufficient evidence. The failure to do so is fatal to its request that we review the trial court's denial of the City's CR 50(a) motion at the close of Washburn's case-in-chief.

¶84 The City makes several arguments why we should not apply the federal construction of FRCP 50 to CR 50. They are not persuasive.

---

as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under rule 59. In ruling on a renewed motion, the court may:

    (1) If a verdict was returned:

    (A) allow the judgment to stand,

    (B) order a new trial, or

    (C) direct entry of judgment as a matter of law . . . .

[95] 4 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 50 author's cmt. 16, at 36 (5th ed. Supp. 2011).

¶85 First, the City argues that adoption of the *Unitherm* rule would be an extremely harsh penalty because it has never before been applied in Washington. But the Supreme Court's *Unitherm* decision was issued in 2006, prior to the incidents at issue here. Given the accepted principle that we may look to federal decisions interpreting federal rules that are substantially similar to our state's rules,[96] the City's argument is not persuasive. Additionally, that same argument would apply equally to any adoption of a construction of a similarly worded federal rule when construing our state rules of civil procedure. We are unaware of any case that has taken that position, and the City fails to cite any authority in support of this argument.[97]

¶86 Second, the City attempts to distinguish the federal rule on the basis that in contrast to *Unitherm*, sufficiency of factual evidence is not at issue here.[98] Rather, the City claims the question before us is "the sufficiency of the evidence with respect to a legal issue: whether the City owed the plaintiffs any duty of care."[99] This claimed distinction is not material.

¶87 We explained earlier in this opinion that instruction 12 established the law of the case regarding the City's duty. Thus, the question is whether there was sufficient evidence given the "duty" definition established by instruction 12. Here, as we also explained earlier in this opinion, the evidence is sufficient to support the verdict. Accordingly, we reject this argument.

¶88 The City also moved for reconsideration of this portion of our original decision. In addition, we granted Washington Defense Trial Lawyers leave to file its amicus

---

[96] *Bryant*, 119 Wn.2d at 218-19.

[97] *See State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992) (holding that appellate courts will not review an issue unsupported by authority or persuasive argument).

[98] *Unitherm*, 546 U.S. at 403.

[99] Reply Brief of Appellant City of Federal Way at 8.

memorandum in support of the City's position. Having reviewed the authorities submitted by the parties and amicus, we adhere to our original decision that the City failed to lay a proper foundation for appeal.

¶89 The one point that requires additional discussion is the assertion by the City and amicus Defense Trial Lawyers that a CR 50(b) motion was not required because all that was at issue posttrial was an alleged error of law. This assertion ignores the record in this case.

¶90 This matter went to trial because the trial court properly denied both motions for summary judgment by the City. Moreover, at trial, the court gave instruction 12 and other instructions that are now the law of the case. Given this record, the issue posttrial was whether the evidence adduced at trial supported the verdict, given instruction 12 and the other instructions given to the jury. In sum, the question then before the court was not merely a legal issue. Rather, it involved the sufficiency of evidence as well. Accordingly, we reject this attempt to recharacterize what was at issue in an attempt to persuade us that the City properly laid a foundation for appeal.

## NEW TRIAL

¶91 Finally, the City argues that the trial court abused its discretion when it granted Washburn's motion for a new trial on damages. We disagree.

¶92 Determination of the amount of damages is within the province of the jury.[100] But on review of a trial court's grant of a motion for a new trial based on inadequate damages, reversal is warranted only "where the trial court abuses its discretion."[101] Further, "[a] much stronger showing of abuse of discretion will be required to set aside an order granting a new trial than an order denying one

---

[100] *Palmer v. Jensen*, 132 Wn.2d 193, 197, 937 P.2d 597 (1997).

[101] *Id.* (citing *Wooldridge v. Woolett*, 96 Wn.2d 659, 668, 638 P.2d 566 (1981)).

because the denial of a new trial 'concludes [the parties'] rights.' "[102]

¶93 The supreme court's analysis in *Palmer v. Jensen*[103] controls here. There, Jensen argued that Palmer's special damages were still a matter of legitimate dispute because the jury could have concluded some of Palmer's treatment was unnecessary.[104] But the defense presented no evidence to call the treatment into question.[105] The supreme court held that because the "uncontroverted evidence at trial established that all of Palmer's medical treatment was related to the accident, was necessary, and was reasonable," a new trial should be granted on the issue of damages only.[106]

¶94 Here, the City did not dispute the evidence supporting the close relationship between Roznowski and her daughters that constitutes the underpinning of their claims as individuals. Likewise, the City did not dispute that they experienced pain and suffering as a result of her death.

¶95 Furthermore, the special verdict form read "Was Defendant City of Federal Way's negligence a ***proximate cause*** of injury and damage to the ***plaintiffs***?" The jury responded "yes."[107] Thus, the jury determined that the City's negligence was a proximate cause of injury and damages to all three plaintiffs, not just the estate.

¶96 The City argues that the jury's decision to award nothing to Roznowski's daughters merely indicates that the jury "determined that Ms. Loh and Ms. Washburn suffered

---

[102] *Id.* (second alteration in original) (quoting *Baxter v. Greyhound Corp.*, 65 Wn.2d 421, 437, 397 P.2d 857 (1964)).

[103] 132 Wn.2d 193, 937 P.2d 597 (1997).

[104] *Id.* at 199.

[105] *Id.*

[106] *Id.*

[107] Clerk's Papers at 2093 (emphasis added).

general damages all caused by Paul Kim murdering their mother, distinct from Ms. Roznowski's damages flowing from the 'foreseeable' assault."[108] However, the supreme court dismissed a similar argument in *Palmer*. The difficulty where a defendant argues that the jury "could have concluded" that some damages were not warranted " 'is that, carried to its logical conclusion, there never could be an inadequate verdict, because the conclusive answer would always be that the jury did not have to believe the witnesses who testified as to damages, even though there was no contradiction or dispute.' "[109] The undisputed evidence in this case of the daughters' relationship with their mother and the determination that the City's negligence was a proximate cause of injury and damages to all plaintiffs together support the trial court's decision to grant a new trial for damages.

¶97 The trial court did not abuse its discretion by granting a new trial on damages for Washburn.

## OTHER CLAIMS AND DEFENSES

¶98 Washburn argues that we should affirm the judgment on the jury verdict in favor of Roznowski on the basis of the duty articulated in *Restatement (Second) of Torts* § 302B (1965) that this court applied in *Robb v. City of Seattle*[110] and other cases.[111] Washburn also argues that the public duty doctrine does not bar the claims in this action because the case law's failure to enforce, legislative intent, and special relationship exceptions to that doctrine apply to this case.

---

[108] Brief of Appellant City of Federal Way at 49.

[109] *Palmer*, 132 Wn.2d at 200 (quoting *Ide v. Stoltenow*, 47 Wn.2d 847, 851, 289 P.2d 1007 (1955)).

[110] 159 Wn. App. 133, 144, 245 P.3d 242 (2010).

[111] *Tae Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 197-99, 15 P.3d 1283 (2001); *Parrilla v. King County*, 138 Wn. App. 427, 435-39, 157 P.3d 879 (2007).

¶99 The City claims that *Robb* is inapplicable here. The City also claims that none of the case law exceptions to the public duty doctrine apply to this case.

¶100 Because we affirm on the basis of the law of the case doctrine and decline to review the denials of the City's first motion for summary judgment and the CR 50(a) motion, we decline to reach these respective arguments of the parties.

¶101 We affirm the judgment on the jury verdict, subject to the trial court's grant of a new trial on damages for Roznowski's daughters, which we also affirm.

BECKER and LAU, JJ., concur.

Review granted at 176 Wn.2d 1010 (2013).