# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JANET RAE TIBBITS, individually and as guardian for JOSEPH TIBBITS, her minor son, and as attorney in fact for her daughter, MYCHELLE LEIGH MILES-TIBBITS,

          Appellant,

          v.

STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS,

          Respondent.

No. 71147-4-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: February 17, 2015

APPELWICK, J. — Tibbits appeals from summary judgment dismissal of her tort action against the DOC related to its supervision of Miles. The DOC modified the terms of Miles' community custody conditions, allowing him to travel out of Spokane County to a treatment facility without requiring that his travel be supervised. Once in King County, Miles failed to report to the treatment facility, violated the terms of a no-contact order, and traumatized Tibbits and her son. Modifying conditions of community custody is a quasi-judicial function protected by judicial immunity. We affirm.

## FACTS

On June 12, 2009, Kevin Miles went to Janet Tibbits's house while Tibbits was home with her son. Miles was drunk and forced his way into the home. Tibbits was able to pack some clothing and she and her son left the house. Miles remained in Tibbits's house for several days and left three suicide notes. After the incident, Tibbits and her children went into counseling for stress and trauma.

Miles and Tibbits had been involved in a volatile relationship for several years before the incident. The relationship began in 1991 and a no-contact order (NCO) was issued against Miles shortly thereafter. On multiple occasions after the NCO was issued, Miles violated it, was arrested, and was incarcerated. In September 2005, Miles violated the NCO by appearing at Tibbits's house. On that occasion, Miles tried to hang himself from a tree in her front yard with an extension cord. Miles was granted a drug offender sentencing alternative (DOSA) and was sentenced to 19 months in confinement and 19 months of community custody. Miles was prohibited from using alcohol and from contacting Tibbits.

After his release, Miles was arrested and sanctioned on several occasions for violating his conditions of supervision relating to alcohol use and participation in treatment. Miles was also arrested for violating the NCO on November 17, 2007. Due to his alcohol use, Miles's DOSA was eventually revoked, and he returned to prison. The court imposed 18 months of community custody to be served after Miles's release. Miles wanted to be released to his mother's home in Pierce County, but in order to reduce the likelihood of contact between Miles and Tibbits, the DOC release staff required that he be released in Spokane. Miles was released from confinement on September 25, 2008 and he was transported to Spokane.

In Spokane, Laura Burgor-Glass was assigned to be Miles's Community Custody Officer (CCO). From October 2008 through June 2009, Burgor-Glass had frequent contact with Miles. Burgor-Glass consulted with her supervisor, Todd Wiggs, about Miles's case during the period of supervision.

Between October 2008 and March 2009, Miles continued to drink alcohol, violating the terms of his community custody. Consequently, Miles served some time in formal detention. On June 3, 2009, after additional reports of Miles's drinking, Burgor-Glass took Miles into custody and drove him to check in at Community Detox Services (Detox), a resource used by the DOC to place supervisees into treatment programs. Detox was tasked with finding an available in-patient treatment facility that would accept Miles. Typically, after finding a facility to accept a patient, Detox arranges and coordinates the transportation of the patient to the treatment facility. Detox needs the flexibility to transport individuals quickly and immediately to these facilities, because it can be difficult to find bed space. Detox was unable to find a local facility willing or able to accept Miles.

On June 12, 2009, a Detox staff member called the Spokane DOC field office to report that they had found a bed for Miles at Thunderbird Treatment Center in Western Washington. Detox called to make sure that the conditions of Miles's supervision allowed him to go to treatment out of the county. Burgor-Glass was out of the office so Detox spoke with Wiggs.

Before Wiggs authorized Miles' enrollment at Thunderbird, he looked to see if there was a "victim wraparound" for Tibbits or any other geographical restrictions placed on Miles. A "victim wraparound" involves an in-person meeting between the offender's victim, DOC staff (including the offender's CCO), and other applicable law enforcement or community resource representatives. The purpose of the meeting is to discuss the offender's impending release from custody and to develop a safety plan that is intended to help minimize the risk that the offender will cause future harm to the victim. There was

no record of a victim wraparound for Tibbits. As a result, Wiggs concluded that Tibbits chose not to participate in the program.

Wiggs also considered Miles's behavior during his nine month DOC supervision. Wiggs knew about an NCO and that it was in place to prevent contact with an individual on the "west side." But, during the nine months, Wiggs did not see anything in Miles' case indicating that he had intent or desire to contact Tibbits or that he posed a threat to anyone on the west side of Washington. None of Miles's community custody violations during the nine month period were related to contact with Tibbits. Wiggs further stated that he considered that Miles was not constantly supervised in Spokane during the nine month period and had the means to buy a bus or plane ticket to the west side of the state, but he did not do so.

On June 12, 2009 Wiggs verbally authorized Miles's travel out of the county for the purpose of attending and receiving in-patient treatment at Thunderbird. Wiggs did not provide Miles with any travel instructions or restrictions. Detox arranged for Miles to take a bus to Western Washington. The treatment staff from Thunderbird typically meets patients at the bus station. Wiggs was unsure if that was arranged in this case.

On June 16, 2009, Detox called and informed the DOC field office that Miles did not make it to Thunderbird. Burgor-Glass immediately secured a warrant for his arrest. Miles was arrested on June 20, 2009.

On June 14, 2012, Tibbits sued the DOC alleging it was grossly negligent in allowing Miles to travel unaccompanied to King County. The trial court dismissed Tibbits's suit on summary judgment. The trial court concluded that the DOC's decision to modify Miles's conditions of community custody to permit out of county travel to an in-patient

treatment facility and Wiggs's choice not to impose restrictions or conditions on the travel constituted modifying and setting conditions of community custody. As a result, it concluded that Wiggs was acting in a quasi-judicial capacity and is protected by judicial immunity pursuant to RCW 9.94A.704(11). Tibbits appeals.

## DISCUSSION

Judges are immune from civil damages suits for acts performed within their judicial capacity. Taggart v. State, 118 Wn.2d 195, 203, 822 P.2d 243 (1992). Judicial immunity extends to actors of governmental agencies performing quasi-judicial functions. See id. at 204. RCW 9.94A.704(11) clearly states that the DOC performs a quasi-judicial function in "setting, modifying, and enforcing conditions of community custody."

Statutory interpretation is a question of law that we review de novo. State v. Gray, 174 Wn.2d 920, 926, 280 P.3d 1110 (2012). The court's primary duty is to ascertain and carry out the legislature's intent. Arborwood Idaho, LLC v. City of Kennewick, 151 Wn.2d 359, 367, 89 P.3d 217 (2004). Statutory interpretation begins with the statute's plain meaning. Ent v. Wash. State Criminal Justice Training Comm'n, 174 Wn. App. 615, 619, 301 P.3d 468 (2013).

This court reviews a grant or denial of summary judgment de novo. Washburn v. City of Federal Way, 169 Wn. App. 588, 609, 283 P.3d 567 (2012), aff'd, 178 Wn.2d 732, 310 P.3d 1275 (2013). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). In conducting this inquiry, the court must view all facts and reasonable inferences in the light most favorable to the nonmoving party. Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d 853, 860-61, 93. P.3d 108 (2004).

5

As a preliminary matter, there is no genuine issue of material fact as to whether Wiggs set, modified, or enforced the conditions of Miles's community custody. Wiggs modified Miles's community custody conditions by allowing him to travel out of the county. The authorization contained no restriction or additional condition that Miles be accompanied. Wiggs's decision to allow Miles to enroll at Thunderbird out of county encompassed the decision to allow Miles to travel unescorted. But, Tibbits argues that the trial court erred in granting summary judgment, because Wiggs's failure to require Miles to be accompanied during travel does not constitute a quasi-judicial function under RCW 9.94A.704(11).

Tibbits separates Wiggs's authorization into two parts: Wiggs's reasoned and deliberate decision to allow Miles to travel to King County for treatment and Wiggs's failure to assess the risks and consequences of unescorted and unsupervised travel. In other words, Tibbits argues that the trial court's characterization of Wiggs's decision not to impose restrictions or conditions on the travel was inaccurate, because Wiggs never made a "decision."[1] Tibbits concedes that Wiggs was likely acting in a quasi-judicial capacity when he decided that Miles needed additional treatment and could travel to King County. But, Tibbits contends that Wiggs's separate failure to consider and specify conditions of transportation for Miles does not fit into the definition of a quasi-judicial function. By contrast, the DOC claims that Wiggs made only one decision: allowing Miles

---

[1] The DOC argues that Tibbits cannot make this argument on appeal, because she did not previously parse the decision in this way. The DOC contends Tibbits referred to Wiggs's actions as a unified "decision" in her summary judgment brief before the trial court. While Tibbits phrased her argument differently below, it was effectively the same argument she raises on appeal—that the unauthorized travel should be considered separate and apart from the decision to allow Miles to begin treatment at Thunderbird. As such, we will address this argument.

6

to travel to King County for treatment, which encompasses all issues related to that travel such as restrictions or limitations. The DOC asserts that this decision constitutes a modification of Miles' community custody and is protected in its entirety as a quasi-judicial function.

Tibbits attempts to separate Wiggs's authorization into two parts: an act and an omission. She argues the latter is not protected by judicial immunity. Tibbits contends that Wiggs did not make all of the proper considerations when he allowed Miles to travel unescorted to Thunderbird. But, by making this argument, she is asserting a defect in Wiggs's modification decision. That defect was the absence of a requirement of supervision. If a decision setting, modifying or enforcing the terms of community custody were subject to challenge on the basis of an arguable omission, no decision would be entitled to judicial immunity. The plain statutory intent that these decisions be protected by immunity would be rendered a nullity. Therefore, we must reject Tibbits's argument. Wiggs's authorization for travel outside Spokane County, with no mention of supervision, is a single decision to modify the conditions of community custody.

Tibbits cites several cases defining "quasi-judicial function," which she says are helpful for her appeal. However, none of the cases she cites analyze the statute at issue here.[2] RCW 9.94A.704(11) clearly states that the DOC performs a quasi-judicial function

---

[2] The cases that Tibbits cites discuss the rationale behind deeming a governmental agency's action a quasi-judicial function protected by judicial immunity. See, e.g., Taggart, 118 Wn.2d 195; Lallas v. Skagit County, 167 Wn.2d 861, 864-67, 225 P.3d 910 (2009); Hertog v. City of Seattle, 138 Wn.2d 265, 288-89, 979 P.2d 400 (199). Tibbits asserts that these cases show that Wiggs's "failure to consider and specify conditions of transportation for Kevin Miles" was not a quasi-judicial function, because it was merely ministerial in nature. But, this misstates the issue. Wiggs made one decision. The process behind it and the logistics arising after it are encompassed in that one decision.

7

"in setting, modifying, and enforcing conditions of community custody." The task here is not to define quasi-judicial function, but rather to determine whether Wiggs's decision constitutes "setting, modifying, and enforcing" the terms of Miles's community custody. RCW 9.94A.704(11).

Therefore, we conclude that Wiggs's decision was a protected quasi-judicial function under RCW 9.94A.704(11) and that the DOC was entitled to judicial immunity. We hold that the trial court did not err when it granted the DOC's motion for summary judgment.

We affirm.

WE CONCUR:

------

And, there is no need to refer to the case law, because the relevant statute here outlines what is a protected quasi-judicial function.