201 JAN 23 F. II: I



# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| ESTATE OF BARBARA BRANDES, | No. 73748-1-I |
| Respondent/Cross-Appellant, | |
| v. | DIVISION ONE |
| BRAND INSULATIONS, INC. | UNPUBLISHED OPINION |
| Appellant/Cross-Respondent. | |
| and | |
| KAISER GYPSUM COMPANY, INC., ATLANTIC RICHFIELD COMPANY,HANSON PERMANENTE CEMENT, INC., f/k/a KAISER CEMENT CORPORATION; METALCLAD INSULATION CORPORATION; METROPOLITAN LIFE INSURANCE COMPANY; and UNION CARBIDE CORPORATION, | |
| Defendants. | FILED: January 23, 2017 |

SPEARMAN, J. — Brand Insulation, Inc. (Brand) appeals the trial court verdict finding it liable for the asbestos-related personal injuries of Barbara Brandes (Barbara).[1] Brand subcontracted to install asbestos-containing insulation at ARCO's Cherry Point Refinery. Barbara was the wife of Raymond Brandes (Raymond), who was exposed to asbestos while employed at the ARCO

---

[1] We refer to Ms. Barbara Brandes by her first name to avoid confusion with Respondent Brand, LLC.

Cherry Point Refinery from 1971 to 1975. Raymond brought asbestos home on his clothes, which Barbara regularly laundered. She eventually developed mesothelioma. On August 16, 2014, Barbara filed a lawsuit in King County Superior Court against numerous defendants for personal injuries sustained due to asbestos exposure. The case proceeded to trial with Brand as the sole remaining defendant. The jury rendered a verdict in favor of Barbara and awarded her $3,500,000 in damages, which was reduced to $2,500,000 on remittitur. Brand appeals, and Barbara cross-appeals the remittitur. We affirm the verdict and reverse the remittitur.

## FACTS

Brand was an insulation subcontractor to general contractor Ralph M. Parsons (Parsons) during the construction phase of the ARCO Cherry Point Refinery. Brand sold to Parsons the insulation that it installed on pipes and other installations. Brand began work in January 1971 and concluded in February 1972. At the beginning of the project, Brand used asbestos-free insulation. At some point, Brand began installing asbestos-containing insulation because the asbestos-free insulation performed poorly. The asbestos insulation was purchased by Brand in containers bearing warnings. Brand did not pass along those warnings to Parsons or to ARCO employees. Brand did not label the pipes it fitted with asbestos insulation. Brand's installation work produced asbestos dust and ARCO employees were nearby when the work was performed. Brand

did not employ industrial hygiene practices to contain asbestos dust or to prevent exposed employees from transporting asbestos away from the work site.

Raymond was an operator at Cherry Point. In November 1971, he began work in the crude unit, which Brand insulated. An operator was responsible for maintaining continuous operation of the processing unit, which required walking through the unit six to eight times a day to monitor and ensure proper operation of the equipment. An operator also prepared equipment for maintenance by removing insulation to gain access to a pipe. Raymond removed insulation by hammering it off or sawing through it. This sometimes produced dust. He performed this activity at least twice each month.

Barbara washed her husband's uniform about twice each week. She shook his uniform before placing it in the washing machine. She also swept up the floor of the laundry area. Barbara was diagnosed with mesothelioma at the age of 79. It caused shortness of breath, fatigue, weight loss, nausea, and neuropathy. She underwent chemotherapy, but her disease was terminal.

Prior to trial, Brand moved for summary judgment on numerous grounds. Co-defendant Metalclad moved for summary judgment based on the contractor's statute of repose. In its reply to Barbara's response, Brand adopted that defense and incorporated it by reference.[2] Barbara also moved for summary judgment to strike Brand's affirmative defenses, including their statute of repose defense. The trial court granted Brand's motion to dismiss Barbara's strict liability claims, but

_____

[2] Barbara did not object to Brand raising this issue on reply.

3

denied the remainder of Brand's motion. The trial court also denied Barbara's

motion to strike Brand's statute of repose defense. Brand moved for

reconsideration on the statute of repose issue, which the trial court denied.

Trial began on April 6, 2015. On the day before closing arguments,

Barbara passed away at the age of 80. Her counsel filed a Notice of Death and

Motion for Substitution, requesting that the trial proceed despite her passing. The

trial court granted the motion for substitution and authorized continuation of the

litigation as a survivorship action. The trial judge advised the jury of Barbara's

death and gave instructions on the new procedural posture of the case.

The jury rendered a verdict in favor of Barbara's estate and awarded

$3,500,000 in damages. Barbara's estate brought a motion to allocate fifty

percent of the settlement proceeds to a future wrongful death claim. Brand

opposed the motion and filed a motion for new trial, or in the alternative,

remittitur. The trial judge denied Brand's motion for a new trial but granted

remittitur, reducing the verdict by $1,000,000. The trial judge granted Barbara's

motion and set off twenty percent of the settlement proceeds to the statutory

heirs' future wrongful death claim.

## DISCUSSION

### Statute of Repose

We review a summary judgment order de novo, engaging in the same

inquiry as the superior court. Lybberts v. Grant County, 141 Wn.2d 29, 34, 1 P.3d

1124 (2000). We view the facts and all reasonable inferences therefrom in the

4

light most favorable to the nonmoving party. Id. However, we will only review trial court decisions as a matter of right as provided in RAP 2.2. Summary judgment orders are not reviewable under RAP 2.2 after a trial on the merits. Johnson v. Rothstein, 52 Wn. App 303, 759 P.2d 471 (1988).

Brand argues that the six year construction statute of repose bars Barbara's claims because the refinery's insulation is an improvement on real property and Barbara brings her claim well after the repose period ended. Barbara argues that this issue is not properly before the court because it was denied on summary judgment and the case proceeded to trial and judgment.

A statute of repose terminates a potential claim after a specified time, even if an injury has not yet occurred. Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols–Kiewit Constr. Co., 176 Wn.2d 502, 511, 296 P.3d 821 (2013). It bars an action for construction defects that does not accrue within six years from the time construction is completed. RCW 4.16.310. The statute of repose applies to "all claims or causes of action of any kind against any person, arising from such person having constructed, altered or repaired any improvement upon real property . . . ." RCW 4.16.300.

The statute of repose only "protects individuals who work on structural aspects of the building." Condit v. Lewis Refrigeration Co., 101 Wn.2d 106, 111, 676 P.2d 466 (1984). "[T]he statute focuses on individuals whose activities relate to construction of the improvement." Id. at 110. The Condit court endorsed New Jersey's interpretation of its statute of repose:

the intent of the language of the statute was to protect those who contribute to the design, planning, supervision or construction of a structural improvement to real estate and those systems, ordinarily mechanical systems, such as heating, electrical, plumbing and air conditioning, which are integrally a normal part of that kind of improvement, and which are required for the structure to actually function as intended.

Id. at 110-111 (citing Brown v. Jersey Central Power & Light Co., 163 N.J. Super. 179, 195, 394 A.2d 397 (1978)). In Condit, a conveyer-belt freezer tunnel was not "integral" to the factory in which it was installed. Condit affirmed the holding in Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co., 81 Wn.2d 528, 503 P.2d 108 (1972) that a refrigeration system used to cool a cold warehouse is integral to the warehouse and falls within the scope of the statute of repose. But in Morse v. City of Toppenish, 46 Wn. App. 60, 64, 729 P.2d 638 (1986), the court held that a diving board is not integral to a swimming pool.

The threshold question is whether this court should consider the summary judgment ruling after the case proceeded to trial and judgment. "A denial of summary judgment cannot be appealed following a trial if the denial was based upon a determination that material facts are disputed and must be resolved by the trier of fact." Johnson, 52 Wn. App at 303-304. "The primary purpose of a summary judgment procedure is to avoid a useless trial." Id. at 307 (citing Olympic Fish Prods., Inc. v. Lloyd, 93 Wn.2d 596, 602, 611 P.2d 737 (1980)). Once a trial on the merits is held, review of summary judgment does nothing to further this purpose. Id. However, an appellate court may review such a denial where the disputed issues of fact were not material and the decision on summary

judgment turned solely on a substantive issue of law. Kaplan v. Northwestern Mut. Life Ins. Co., 115 Wn. App. 791, 804, 65 P.3d 16 (2003) (citing Univ. Vill. Ltd. Partners v. King County, 106 Wn. App. 321, 324-25, 23 P.3d 1090 (2001)).

In this case, the trial court considered summary judgment motions by both parties on the statute of repose. The court found that there were disputed material facts on whether the statute of repose applied, and denied both parties' motions for summary judgment on that issue. We agree that the disputed questions of fact are material. Given the requirement in Condit to determine whether insulation was "integral" to the refinery, disputed material facts include the purpose, necessity, and permanence of the insulation that Brand installed in the refinery. Because material disputed facts must be resolved by the trier of fact, the summary judgment order cannot be appealed because it was followed by a trial. Johnson, 52 Wn. App 303.

Nevertheless, Brand asks this court to review the denial of summary judgment and find that the statute of repose applies. But even if this issue turned on a question of law and were reviewable under Kaplan, we would still decline to review it. We will not consider an error that was not raised in the trial court. RAP 2.5(a); State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). This rule encourages the efficient use of judicial resources: parties must allow the trial court to rule on all disputed issues and correct an error in order to avoid appeal. Scott, 110 Wn.2d 682; State v. Ramirez, 62 Wn. App. 301, 305, 814 P.2d 227 (1991); See Adcox v. Children's Orthopedic Hosp. and Medical Center, 123

Wn.2d 15, 35 n.9, 864 P.2d 921 (1993). At trial, Brand did not elicit expert testimony or offer exhibits to develop the material facts which formed the basis for the trial court's denial of summary judgment. Nor did Brand renew the issue at trial by moving for a directed verdict or offering jury instructions on the statute of repose for this court to review. As a result, we conclude that Brand failed to preserve the issue for review by this court and we decline to consider it on appeal.

Duty of Care

Whether the defendant owes duty of care is a question of law reviewed de novo. Munich v. Skagit Emergency Commc'n Ctr., 175 Wn.2d 871, 288 P.3d 328 (2012). Brand contends that there is no precedent that establishes a duty of care in a take-home asbestos case where the defendant did not have control over the actions of the individual exposed to asbestos. It argues that recognizing such a duty would result in a slippery slope of liability.

A duty of care is an essential element of common law negligence. It is an "obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks." Daly v. Lynch, 24 Wn. App. 69, 76, 600 P.2d 592 (1979) (quoting W. Prosser, Law of Torts § 30, at 143 (4th ed.1971)). Whether an affirmative duty to act exists depends upon many factors, including "mixed considerations of logic, common sense, justice, policy, and precedent." Snyder v. Med. Serv. Corp., 145 Wn.2d 233, 243, 35 P.3d 1158 (2001) (internal quotation omitted). A person has a duty

to prevent unreasonable risk of harm to others from his or her own actions. Minahan v. Western Wash. Fair Ass'n, 117 Wn. App. 881, 897, 73 P.3d 1019 (2003) (quoting RESTATEMENT (SECOND) OF TORTS § 321 (1965)). An unreasonable risk gives rise to a duty of care only if a reasonable person would have foreseen the risk. Parrilla v. King County, 138 Wn. App. 427, 436, 157 P.3d 879 (2007) (citing Minahan, 117 Wn. App. at 897).

The asbestos insulation at Cherry Point posed a danger to workers and their families. The insulation was habitually removed in the general maintenance of the refinery. This created asbestos dust that could injure those who inhaled it. When Brand installed asbestos insulation, it did not label the material as asbestos-containing. Brand also created dangerous asbestos dust while installing insulation but it did not take protective measures to prevent exposure to nearby ARCO employees. Brand's failure to label asbestos insulation and contain asbestos dust during construction created an unreasonable risk of harm.

Barbara presented evidence that exposure to families of asbestos workers was foreseeable when Brand insulated Cherry Point. Medical, scientific, and industry/trade literature in the decades leading up to Barbara's exposure had conclusively established the risk of inhaled asbestos dust. Additional studies linked asbestosis or mesothelioma in the spouses and children of asbestos workers to asbestos dust brought home by the worker. Given the availability of information about the risk of harm to the families of asbestos workers, Brand could have foreseen injuries to the spouses of ARCO employees such as

9

Barbara stemming from the unreasonable risk of harm it created in its installation of asbestos insulation at Cherry Point.

Brand contends that Barbara has not identified a legal duty because Washington law has recognized a duty for "take-home" exposure only in the context of strict liability and premises liability where the premises owner was also the general contractor. Lunsford, 125 Wn. App. 784 (strict liability); Arnold v. Saberhagen Holdings, Inc., 157 Wn. App. 649, 240 P.3d 162 (2010) (general contractor premises liability). This argument sidesteps the basic negligence principles that establish a duty of care in this case. The recognition of a duty of care in the context of strict liability and premises liability does not preclude recognizing such a duty here under well-established principles of negligence.

Brand also argues that its activities should be characterized as inaction or nonfeasance, which does not give rise to a duty of care. This argument fails because Brand acted affirmatively when it installed insulation. And it engaged in this activity in a way that created an unreasonable risk of harm was foreseeable as to Barbara. Under these circumstances, we conclude that Brand owed a duty of care to Barbara.

Finally, Brand argues no duty of care exists because there is no special relationship between the parties. A special relationship is required if the plaintiff's injury is caused by the criminal conduct of a third party or a defendant's nonfeasance. See Tae Kim v. Budget Rent A Car Sys., Inc., 143 Wn.2d 190, 195, 15 P.3d 1283 (2001); 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON

PRACTICE: TORT LAW AND PRACTICE § 2.8 at 52 (4th ed. 2013). Barbara's injuries were not caused by criminal conduct, nor by Brand's nonfeasance. No special relationship is required to establish duty of care in this case.

Brand did not label the location of asbestos insulation, knowing that it would be habitually removed and create dust. Brand did not employ industrial hygiene practices to control asbestos dust during installation. The risks of asbestos dust to workers and others residing in their household was foreseeable at the time of these activities. Under these circumstances, we hold that a duty of care exists because Brand created a foreseeable risk of harm to Barbara.

Causation

Appellate courts review a motion for directed verdict de novo. Ramey v. Knorr, 130 Wn. App 672, 675-76, 124 P.3d 314 (2005). A directed verdict is granted if "there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue." CR 50(a)(1).

Brand argues that there is not a sufficient basis to find causation because Barbara did not demonstrate how much asbestos she was exposed to. In response, Barbara points to an expert witness who testified that Barbara's mesothelioma was caused by Brand and argues that this is sufficient for a reasonable jury to find causation.

To prove causation in an asbestos-related case, the plaintiff must present evidence that the defendant's conduct was a substantial factor in bringing about the plaintiff's harm. Morgan v. Aurora Pump Co., 159 Wn. App. 724, 740, 248

P.3d 1052 (2011). Courts consider several factors when evaluating whether there is sufficient evidence of causation against a particular defendant: (1) plaintiff's proximity to the asbestos product when the exposure occurred and the expanse of the work site where asbestos fibers were released; (2) the extent of time the plaintiff was exposed to the product; (3) the types of asbestos products to which plaintiff was exposed and the ways in which the products were handled and used, and (4) the evidence presented as to medical causation of the plaintiffs' particular disease. Morgan, 159 Wn. App. at 740 (citing Lockwood v. AC &S, Inc., 109 Wn.2d 235, 248-49, 744 P.2d 605 (1987)). "Ultimately, the sufficiency of the evidence of causation will depend on the unique circumstances of each case," but "[n]evertheless, the factors listed above are matters which trial courts should consider when deciding if the evidence is sufficient to take such cases to the jury." Lockwood, 109 Wn.2d at 249.

Barbara's expert witness, Dr. Andrew Churg, testified about the cause of mesothelioma. He testified that Brand's activities as an insulation contractor contributed to Barbara's mesothelioma. Dr. Churg also testified that the asbestos exposure threshold for mesothelioma is even lower than .1 asbestos fiber per cubic centimeter (.1 f/cc) per working year. Brand cross-examined Dr. Churg on the latter point, noting his prior testimony in another case that mesothelioma requires asbestos exposure to at least a .1 f/cc per working year. VRP 567-568. Brand argues that there is no evidence that Barbara was exposed in excess of .1 f/cc per working year, so there is a legally insufficient basis to find causation. But

Barbara presented expert medical testimony that her mesothelioma was caused by Brand's activities. Based on this testimony, a reasonable jury could, and in this case did, find causation. The jury was made aware of Dr. Churg's purportedly contradictory testimony and it was free to credit or discredit his opinion. We do not reweigh the evidence or question the jury's credibility determinations on appeal. Morse v. Antonellis, 149 Wn.2d 572, 574, 70 P.3d 125 (2003). Because Barbara presented sufficient evidence of causation, we conclude that the trial court did not err when it denied Brand's motion for a directed verdict.

Duty to Warn

We review alleged errors of law in jury instructions de novo. Blaney v. Int'l Ass'n of Machinist & Aerospace Workers, Dist. No. 160, 151 Wn.2d 203, 210, 87 P.3d 757 (2004). Jury instructions are proper when they allow parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. Id.

Brand argues that the trial court erred by instructing the jury to consider whether Brand was negligent with respect to its sales of insulation at the refinery. It contends that if Brand is not a "seller" for the purposes of Barbara's dismissed strict liability claim under RESTATEMENT (SECOND) OF TORTS § 402A, it cannot be a "supplier" for the purposes of a negligent sales claim under RESTATEMENT (SECOND) OF TORTS § 388.

Under the law of negligence, a defendant's duty is to exercise ordinary care. A manufacturer's duty of ordinary care includes a duty to warn of hazards involved in the use of a product, which are or should be known to the manufacturer. Simonetta v. Viad Corp., 165 Wn.2d 341, 348, 197 P.3d 127, 131 (2008) citing Restatement (Second) of Torts § 388 (1965). Restatement (Second) of Torts § 388 applies to "sellers, lessors, donors, or lenders, irrespective of whether the chattel is made by them or a third person." Restatement (Second) of Torts § 388, cmt.c (1965). The rule encompasses "any person who ... gives possession of a chattel for another's use ... without disclosing his knowledge that the chattel is dangerous for the use for which it is supplied." Id. Simonetta clarifies that "the duty to warn is limited to those in the chain of distribution of the hazardous product." Simonetta, 165 Wn.2d at 354.

Brand selected, ordered, supplied, and sold the insulation that it installed in the refinery.[3] Brand invoiced general contractor Parsons for the cost of materials. Brand had some discretion to select its materials. It did not simply procure the material that Parsons or ARCO specified. While Parsons and/or ARCO were sophisticated buyers, they did not select the exact material for Brand

---

[3] Brand selected its insulation from several options. Brand's subcontract specified that the insulation be either from PABCO or Johns-Manville. The contract specification stated that the insulation could be Unibestos, Kaylo, Thermobestos, or Super Caltemp. Valve bodies had to be insulated with PABCO #127 insulated cement. Brand selected PABCO to supply the majority of the insulation for the project. Johns-Manville and Owens Corning product was also used. Brand selected PABCO material because it was the cheapest to ship. Brand purchased and took possession of the insulation at Cherry Point, and invoiced Parsons for the insulation on a monthly basis.

14

to purchase. It follows that Brand has a duty to warn about the danger of the product it selected and sold.

Brand argues that if it is not a seller under RESTATEMENT (SECOND) OF TORTS § 402A (1965), then it cannot be a seller for the purposes of RESTATEMENT (SECOND) OF TORTS § 388. This argument fails. These two sections of the restatement have different language, interpretive caselaw, and policy rationales. In addition, the trial court's dismissal of Barbara's § 402A strict liability claim does not bind this court to an outcome on § 388 that is inconsistent with the law. We conclude that Brand is a supplier within the chain of distribution of asbestos insulation. Accordingly, the trial court did not err when it instructed the jury on negligent sales.

Contractor's Defense

Brand contends the trial court erred when it refused to give a "contractor's defense" instruction.[4] Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. Blaney, 151 Wn.2d 203. The instruction is erroneous if any of these elements are missing, but an erroneous instruction is reversible error only if it prejudices a party. Anfinson v. FedEx Ground Package System,

_____

[4] Brand also argues that the trial court erred by denying summary judgment on contractor's defense grounds. "'A summary judgment denial cannot be appealed following a trial if the denial was based upon a determination that the material facts are disputed and must be resolved by the factfinder.'" Kaplan, 115 Wn. App. at 799 (quoting Brothers v. Pub. Sch. Employees of Washington, 88 Wn. App. 398, 409, 945 P.2d 208 (1997)). The trial court denied Brand's summary judgment motion on its affirmative contractor's defense due to questions of fact on the negligence claim. We do not review a motion for summary judgment after a trial.

15

Inc., 174 Wn.2d 851, 281 P.3d 289 (2012). We review alleged errors in instructing the jury de novo. Blaney, 151 Wn.2d at 210.

Brand's proposed instruction advised the jury that a contractor who performs work in accordance with specifications provided by the owner is not liable if specified construction materials are later proven to be defective. The trial court gave a general negligence jury instruction instead. Employing this general negligence instruction, Brand argued in closing that it was not negligent because its contract specifications called for asbestos insulation. Brand was permitted to argue its theory of the case, the instructions did not mislead the jury, and the jury was properly informed of the applicable law. The trial court did not err by refusing to instruct the jury on a contractor's defense.

Allocation to Wrongful Death Cause of Action

A trial court's ruling on the reasonableness of a settlement is a factual determination. This court reviews the trial court's approval of settlement agreements for substantial evidence. Brewer v. Fibreboard Corp., 127 Wn.2d 512, 523, 901 P.2d 297 (1995) (citing Glover v. Tacoma General Hosp., 98 Wn.2d 708, 711, 658 P.2d 1230 (1983) (overruled on other grounds).

Brand argues that the trial court erred when it allocated twenty percent of settlement proceeds to a future wrongful death claim. Prior to trial, Barbara settled her personal injury claims against multiple defendants. The parties agree that Barbara explicitly or impliedly released future wrongful death claims in exchange for settlement monies. After trial, the plaintiff requested that half of the

settlement proceeds be allocated to the wrongful death claim released by Barbara, and the other half allocated to the personal injury claim released by Barbara. Under principles of joint and several liability, Brand was not entitled to set-off the value of claims that were not pursued against it at trial, such as wrongful death. Thus, Brand opposed this allocation, which reduced the amount of settlement proceeds that would set off the $3,500,000 judgment against it. Brand requested that the court allocate none of the settlement to a wrongful death action. This would allocate all of the settlement proceeds to the released personal injury claims and reduce the personal injury judgment against Brand. The trial court ordered that twenty percent of the settlement proceeds be allocated to future wrongful death claims:

> The jury awarded noneconomic damages in the amount of $3,500,000.00. On Brand's motion, the Court granted remittitur, reducing the judgment to $2,500,000.00. The total settlement proceeds prior to judgment were $1,965,710.76. Under RCW 4.22.060(2), Brand is entitled to a set-off of 80% of that amount.
> . . .
> [Brand] is liable for Plaintiff's damages in the amount of $927,431.39.

Clerk's Papers (CP) at 5426-27.

On appeal, Brand argues that any allocation of settlement proceeds to a wrongful death action was improper because the settlement of Barbara's personal injury claim extinguished a wrongful death claim. "When the death of a person is caused by the wrongful act, neglect, or default of another his or her personal representative may maintain an action for damages against the person causing the death. . . ." RCW 4.20.010. The wrongful death action is for the

benefit of statutory heirs. RCW 4.20.020. But a decedent, in her lifetime, may pursue a course of action that extinguishes an heir's cause of action for wrongful death. Deggs v. Asbestos Corp. Ltd., 186 Wn.2d 716, 725, 381 P.3d 32 (2016). "[A] release and satisfaction by the person injured of his right of action for the injury bars the right in the beneficiaries to maintain an action for his death occasioned by the injury." Brodie v. Washington Water Power Co., 92 Wash. 574, 576-77, 159 P.791 (1916). Brand asks that we reverse the trial court's allocation of settlement proceeds because Barbara's settlement bars the wrongful death action under Brodie and Deggs.

But on the facts before us, Brodie and Deggs do not control. The issue here is not whether Barbara's personal representative can maintain a wrongful death suit, but whether a settlement would have occurred at all but for settlement of the potential wrongful death claim. Stated differently, because the release of Barbara's wrongful death claim was a necessary concession to reach a negotiated settlement, it is clearly valuable consideration which is reflected to some degree in the settlement amount. We conclude that the trial court did not err when it allocated a portion of the settlement to the potential wrongful death claim. The only issue is to what degree. But because Brand does not challenge the trial court's finding that the release was worth twenty percent of the settlement proceeds, that issue is not before us.

Work Simulation Video

We review the trial court's decision to admit or exclude evidence for manifest abuse of discretion. Degroot v. Berkley Const., Inc., 83 Wn. App. 125, 128, 920 P.2d 619 (1996).

Brand argues that the trial court erred when it refused to exclude from evidence a work simulation video that showed a worker sawing asbestos-containing insulation and shaking out asbestos-containing clothes. Brand argues that the evidence was irrelevant and prejudicial because it did not replicate the conditions experienced by Barbara and Raymond.

Demonstrative evidence is permitted "if the experiment was conducted under substantially similar conditions as the event at issue." State v. Finch, 137 Wn.2d 792, 816, 975 P.2d 967 (1999) (citing Jenkins v. Snohomish County Pub. Util. Dist. No. 1, 105 Wn.2d 99, 107, 713 P.2d 79 (1986)). Determining whether the similarity is sufficient is within the discretion of the trial court. Id. If the evidence is admitted, any lack of similarity goes to the weight of the evidence. Id. We review the trial court's evidentiary ruling for abuse of discretion and will only disturb the ruling if it is manifestly unreasonable or based on untenable grounds. In re Pers. Restraint of Duncan, 167 Wn.2d 398, 402, 219 P.3d 666 (2009). A ruling is manifestly unreasonable if it "'adopts a view that no reasonable person would take.'" Id. (quoting Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 132 P.3d 115 (2006)).

Brand argues there are substantial differences between the work simulation video and the actual conditions under which Barbara and Raymond were exposed to asbestos. It points out that the video was illuminated to enhance the visibility of the asbestos particles and that Raymond's work took place outside in windy conditions. Whereas the video was filmed inside with no air currents and a different brand of insulation was used in the video. Brand also argues the video was prejudicial because the individuals in the video wore protective clothing and facemasks. The trial court determined that in spite of these differences, the conditions shown in the video were substantially similar to the conditions experienced by Raymond and Barbara because it showed individuals sawing insulation and shaking out clothing that had been exposed to the dust created by that activity. We cannot say that no reasonable person would adopt this view. In addition, in light of the similar conditions, the relevance of the video outweighs any prejudicial effect of seeing workers handle asbestos in protective gear. We conclude that the trial court did not abuse its discretion by denying Brand's motion in limine and admitting the video. There was no error.

Remittitur

Barbara cross appeals the trial court's reduction of her damages award from $3,500,000 to $2,500,000. A decision to decrease a jury's award is reviewed de novo. RCW 4.76.030; Robinson v. Safeway Stores, Inc., 113 Wn.2d 154, 161-62, 776 P.2d 676 (1989). But we give great deference to the jury's determination of damages. Sofie v. Fibreboard Corp., 112 Wn.2d 636, 667, 771

P.2d 711 (1989). "'An appellate court will not disturb an award of damages made by a jury unless it is outside the range of substantial evidence in the record, or shocks the conscience of the court, or appears to have been arrived at as the result of passion or prejudice.'" Bunch v. King Cty. Dep't of Youth Servs., 155 Wn.2d 165, 179, 116 P.3d 381 (2005) (quoting Bingaman v. Grays Harbor Cmty Hosp., 103 Wn.2d 831, 835, 699 P.2d 1230 (1985). The "shocks the conscience" test asks if the award is "flagrantly outrageous and extravagant." Bingaman, 103 Wn.2d at 836-37. Passion and prejudice must be "unmistakable" before they affect the jury's award. RCW 4.76.030; Bingaman, 103 Wn.2d at 836.

The trial court remitted Barbara's damages on several bases. First, "[t]he jury was visibly and audibly shaken when told of the plaintiff's death." CP at 5429. Second, the jury instructions did not emphasize that damages included only pre-death pain and suffering. Id. Third, plaintiff's closing argument contained an inappropriate appeal for punitive and exemplary damages. Id.

Barbara argues that Brand waived any assignment of error to the amount of the award because it failed to object to the continuation of the trial after Barbara's death and to alleged improper arguments at closing. She argues that even if the assignment of error was not waived, her award should not have been reduced because it was not unmistakably the result of passion or prejudice. Brand argues that their failure to object is immaterial. It contend that the grant of remittitur should be upheld because the jury verdict was influenced by passion and unsupported by evidence.

21

We agree with Barbara. Brand did not object to notifying the jury of the plaintiff's death or to continuing the trial as a survivorship action. When the jury was so instructed and appeared shaken, Brand did not respond by requesting clarifying instructions on the impact of Barbara's death on the case. Brand also did not object to inappropriate closing remarks, and contends that this decision was tactical. While these failures to object do not preclude our review, they do indicate that Barbara's death was not so shocking that Brand felt compelled to object, ask for a new trial, or request clarifying jury instructions. Given that we overturn a jury's verdict only in the face of unmistakable passion and prejudice, Brand's inaction shows that any passion or prejudice that may have motivated the jury was not overpowering or unmistakable.

In ordering remittitur, the trial court also reasoned that the jury may not have followed instructions to consider only pre-death damages. A jury is presumed to follow jury instructions and that presumption will prevail until it is overcome by a showing otherwise. Tennant v. Roys, 44 Wn. App. 305, 315-16, 722 P.2d 848 (1986) (citing In re Municipality of Metro. Seattle v. Kenmore Properties, Inc., 67 Wn.2d 923, 930–31, 410 P.2d 790 (1966)). Even if the trial court could have given more elaborate instructions after Barbara's death, there is no showing that the jury did not follow the instructions that were given.

Finally, Barbara offered substantial evidence of her pain and suffering, and that her condition was terminal. The jury knew that Barbara would die of her disease, and so, the fact of her death does not necessarily undermine their

22

verdict. We conclude that the jury's damages award was not unmistakably the result of passion or prejudice, and that it was supported by substantial evidence. Accordingly, we reverse the trial court's grant of remittitur and we remand to the trial court to reinstate the jury's verdict and damages award.

Affirmed in part and reversed in part.

Spearman, J.

WE CONCUR:

Becker, J.