[No. 46696-8-I.  Division One.  April 2, 2001.]

UNIVERSITY VILLAGE LTD. PARTNERS, *Respondent*, v. KING COUNTY, ET AL., *Appellants*.

*Norm Maleng, Prosecuting Attorney,* and *Margaret A. Pahl, Deputy,* for appellants.

*Jeffrey I. Tilden* and *Jeffrey M. Thomas* (of *Gordon Murray Tilden*), for respondent.

BAKER, J. — King County appeals the trial court's denial of summary judgment on University Village's tax uniformity claim against the County. University Village claimed

that the County violated the Washington State Constitution by assessing its land for tax purposes at a higher value per square foot than the land of neighboring parcels. Because land value is only a component of a property's total value upon which an owner is taxed, and University Village produced no evidence to show that its total assessed value was not uniform, we reverse.

## I

In 1994 and 1995, the owners of University Village, an upscale shopping center in Seattle, renovated the property and constructed new retail space at a total investment of $12.5 million. In 1996, pursuant to its annual evaluation process, the King County tax assessor revalued the property for the 1997 tax year as follows:[1]

|  | 1995 Value | 1996 Value |
| --- | --- | --- |
| Land | $20,786,800 | $25,983,500 |
| Buildings, Etc. | 25,600,900 | 24,628,500 |
| **Total Assessed Value:** | $46,387,700 | $50,612,000 |

Determining that of the three statutory appraisal methods available, the income approach was the most reliable, the King County assessor derived a total value for the property by capitalizing the estimated 1996 net operating income at a rate of 8.5 percent. In accordance with RCW 84.40.030(3), he then allocated a portion of the total value to the land at a rate of $25 per square foot. He based this figure on a comparison of sales of adjacent property, namely, Office Depot ($43 per square foot) and Carnation Dairy ($23 per square foot).

University Village appealed the assessment to the King County Board of Equalization arguing that the value was excessive. When the board affirmed, the owners appealed to the Board of Tax Appeals. On appeal, King County undertook appraisal of University Village by the other two recognized methods of valuation, the comparable sales

---

[1] The new construction statute, RCW 36.21.080, is not at issue in this appeal.

approach (market data approach) and the cost approach (cost less depreciation). The appraisals returned values ranging from $50 million to $73 million and demonstrated the unreliability of those two methods for a property of this type. In contrast, University Village offered no credible testimony as to the value of the land or of the property as a whole. The Board of Tax Appeals affirmed and University Village did not seek review of its decision.

Concurrent with its administrative tax appeal, University Village filed this action in King County Superior Court, claiming that King County had violated the uniform taxation clause of article VII, section 1 of the Washington State Constitution by valuing its land at $25 per square foot when the adjacent properties, Office Depot and QFC, were valued at $20 per square foot. Evidence presented at summary judgment showed that the Office Depot and QFC properties were valued using a cost approach. This approach involves valuing land and the cost of replacement buildings, less depreciation, whereas the income approach does not separately value land, but values the property as improved. University Village did not dispute the validity of the total assessed value of its property.

The trial court denied King County's motion for summary judgment and after a bench trial, entered judgment against King County. The County appeals.

II

■ Although we ordinarily do not review an order denying summary judgment after a trial on the merits,[2] we will review such an order if the parties dispute no issues of fact and the decision on summary judgment turned solely on a substantive issue of law.[3] Because the parties in this case agree as to all material facts and the summary judgment was based on a legal conclusion, we will review the trial court's order.

[2] *Johnson v. Rothstein*, 52 Wn. App. 303, 306, 759 P.2d 471 (1988).

[3] *Bulman v. Safeway, Inc.*, 96 Wn. App. 194, 198, 978 P.2d 568 (1999), *review granted*, 140 Wn.2d 1001 (2000).

■■ University Village claims that the County's failure to value the land portion of its real property at the same numerical value as the land portion of the neighboring QFC and Office Depot properties violates its state constitutional right to uniform taxation. Article VII, section I of the Washington State Constitution states in relevant part:

> All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax . . . [a]ll real estate shall constitute one class[.]

The plain language of the section makes clear that it is the tax paid, not the numerical values of property that must be uniform.

It is well established that in determining constitutional equity, a tax is uniform if (a) the taxing authority applies an equal tax rate; and (b) the assessment ratios of the properties at issue are equal.[4] "An 'assessment ratio' is the fractional relationship an assessed value bears to the market value of the property in question" (e.g., if one property is assessed at 80 percent of fair market value, then similar properties must also be valued at the same percentage).[5] Thus, a property valued at a different assessment ratio than like properties will violate the uniform taxation clause of the state constitution.

University Village argues that because its land was given a different per square foot value than the land of two of its neighbors' properties, the assessment ratio was different, resulting in nonuniformity of tax. But the statutory definitions of taxes, assessments, and property indicate that assessment ratio relates to total property value, not solely to a component of it. Under chapter 84.04 RCW, the term "tax" is defined as the imposition of "burdens upon property in proportion to the value thereof. . . ."[6] Real property, for

---

[4] *Belas v. Kiga*, 135 Wn.2d 913, 923, 959 P.2d 1037 (1998).

[5] *Belas*, 135 Wn.2d at 923.

[6] RCW 84.04.100.

tax purposes, is defined as "the land itself . . . *and* all buildings, structures or improvements or other fixtures of whatsoever kind thereon."[7] Assessed value is "the aggregate valuation of the property subject to taxation. . . . "[8] These definitions reflect that taxes are imposed on property as a whole, not on individual parts of it. Indeed, Washington courts have consistently addressed issues of property assessments in that manner.[9]

■ To be successful in its challenge, University Village needs to show not only that the value of the land was not uniform, but that the difference in value effected a disparity in the assessment ratio of the entire subject property relative to similar properties. This it did not do. In fact, University Village does not contest the validity of the total assessed value of its property in this action.[10] We hold that a challenge to the assigned land value component of improved real property appraised by the income method, without more, is insufficient to sustain a constitutional claim of nonuniform taxation, because a difference in land value does not necessarily mean a difference in total assessment ratio in that context.

■ We reject University Village's characterization of the County's practice of assigning land values for property appraised by the income approach. University Village asserts that the County's procedure is unrelated to the facts, and essentially meaningless. RCW 84.40.030(3) requires an assessor to separately determine the values of the land and structures on the land in valuing real property. But the statute goes on to state that the sum of the values may not

---

[7] RCW 84.04.090 (emphasis added).

[8] RCW 84.04.030.

[9] *See Folsom v. County of Spokane*, 106 Wn.2d 760, 725 P.2d 987 (1986); *Sahalee Country Club, Inc. v. Bd. of Tax Appeals*, 108 Wn.2d 26, 735 P.2d 1320 (1987); *Belas v. Kiga*, 135 Wn.2d 913, 959 P.2d 1037 (1998).

[10] University Village appealed the total assessment as excessive, which the Board of Equalization denied and the Board of Tax Appeals affirmed. University Village did not seek review of the decision.

exceed the fair value of the total property.[11] The subsection thus acknowledges that appraisals are, at best, estimates of value and that valuation of the components could lead to an excessive value of the property as a whole. This necessarily contemplates the potential adjustment of component values in order to keep their sum within a property's total assessed value.

The assessor in this case did exactly as the statute mandates. An assessor has the discretion to select the appropriate appraisal method of assessing the value of real property.[12] After ruling out the cost and market data approaches as unreliable, the assessor valued the property using the income method authorized by RCW 84.40.030(2) and approved by the Washington Supreme Court in *Folsom v. County of Spokane*.[13] The income approach, by its nature, does not derive a total value of real property by first separately determining values for the land and improvements and adding them together. Rather, it determines a total value by capitalizing the income generated from the property.

To comply with RCW 84.40.030(3), the assessor then used the statutorily authorized market data approach to determine the percentage of total value that should be allocated to the land. The record establishes that the assessor's methodology in doing so was based upon appropriate data and analysis. The fact that the trial court rejected the assessor's conclusion does not mean that the assessor's procedures were arbitrary or meaningless.

Reducing University Village's total property value by decreasing its land value would cause the disparity in assessment ratio the constitution prohibits. In *Belas v. Kiga*, the Washington Supreme Court struck down Referendum 47, which limited the percentage by which property taxes could be increased in any given year. The court held that the limits resulted in lower effective tax rates for owners of rapidly appreciating property and higher effec-

---

[11] RCW 84.40.030(3).

[12] *Sahalee*, 108 Wn.2d at 36.

[13] 106 Wn.2d 760, 725 P.2d 987 (1986).

tive tax rates for owners of stagnant property, thus violating the constitution's uniform taxation clause.[14] University Village concedes that its total assessed value is not erroneous. Consequently, reducing its tax burden would reduce its effective tax rate as compared to the tax rate paid by its neighboring properties. This result is prohibited by the Washington Constitution.

We decline to consider University Village's federal equal protection claim. In general, arguments or theories not presented to the trial court will not be considered on appeal.[15] This includes questions of constitutional magnitude.[16] University Village abandoned this claim in its first amended complaint, affording the trial court no opportunity to consider the issue. We will not address it here.

AGID, C.J., and WEBSTER, J., concur.

Review denied at 145 Wn.2d 1002 (2001).

---

[14] *Belas v. Kiga*, 135 Wn.2d 913, 927, 959 P.2d 1037 (1998).

[15] *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 290, 840 P.2d 860 (1992).

[16] *Cobb v. Snohomish County*, 86 Wn. App. 223, 235, 935 P.2d 1384 (1997).