IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KEVIN SCHIBEL and TERRI SCHIBEL, husband and wife and the marital community composed thereof, | ) ) ) | No. 35977-8-III |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SPOKANE TEACHERS CREDIT UNION, a Non-Profit Organization, | ) ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Kevin Schibel appeals the defense verdict reached in his

personal injury action against Spokane Teachers Credit Union. We find no error in the

trial court's decision that his status as invitee or licensee was a question for the jury.

Other claimed errors raised on appeal were unpreserved. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In July 2014, Kevin Schibel and his wife commenced a negligence action against

Spokane Teachers Credit Union (STCU) to recover damages for injuries Mr. Schibel

sustained from a fall in an STCU parking lot.

In December 2011, when Mr. Schibel sustained his injury, STCU operated a banking branch on property it owned on Division Street in Spokane. A smaller building located next to STCU's property was occupied by Chairs Coffee.

On an evening that month, Mr. Schibel attended a songwriters association meeting at Chairs. When he arrived at around 6:45 p.m., it was fairly clear, but dark. There was no snow. He pulled into Chairs' parking lot to park but it was full, so he drove around the block and parked in an adjacent lot, which he later learned was STCU's.

Upon leaving Chairs a couple of hours later and walking toward the lot where he had parked, Mr. Schibel could see wheel stops on the asphalt lot that had been painted yellow. But what he did not see, in passing between two cars in STCU's parking lot, was an unpainted wheel stop in front of him. He caught his toe on the stop and fell hard on his left knee. He proved unable to stand on his left leg, and two men who were standing nearby approached and helped him to his car. Realizing he would not be able to walk, Mr. Schibel drove himself to the hospital, where he was diagnosed with a fractured kneecap and underwent surgery the next morning.

After filing his suit and conducting discovery, Mr. Schibel moved for partial summary judgment, asking the court to determine that he was STCU's business invitee as a matter of law. Among the undisputed facts he argued supported his motion were the following:

2

- STCU "was aware that many patrons of Chairs Coffee park vehicles in their parking lot routinely."
- STCU "did not make any efforts to exclude patrons of Chairs Coffee from its parking lot during the day or after hours."
- STCU "has a 'customer parking only' sign in its parking lot, that [STCU] admits is worn, faded, and cannot be viewed at night."
- STCU's "reason for failing to exclude patrons of Chairs Coffee is to foster better relations with both current clients, and potential new clients."

Clerk's Papers (CP) at 13.

STCU resisted summary judgment on the basis that it never extended any invitation to Mr. Schibel, it did not receive a benefit from Mr. Schibel's use of its parking lot, and Mr. Schibel had not known he was parking in a lot owned by STCU. It characterized itself as having "tolerated," not "invited," Mr. Schibel and other Chairs customers who used its lot, and argued that tolerating the parkers qualified them, at most, as licensees.

At the hearing on the summary judgment motion, Mr. Schibel and STCU agreed that the material facts were undisputed. Despite their agreement on that score, the trial court not only denied Mr. Schibel's motion for partial summary judgment but refused to decide his legal status as a matter of law.

The case proceeded to a jury trial. In proposing jury instructions, Mr. Schibel proposed instructions addressing invitee status but none addressing licensee status.[1]

---

[1] Mr. Schibel's original proposed jury instructions included an instruction defining "licensee." His amended proposed instructions dropped the licensee definition, however.

3

STCU proposed instructions addressing licensee or social guest status but none addressing invitee status.

The trial court persisted in its position that Mr. Schibel's status as an invitee or licensee was a question for the jury. Its jury instructions included instructions on the definition of invitee and the duty owed an invitee, and on the definition of licensee and the duty owed a licensee.

When the court provided the parties with its jury instructions and invited objections, Mr. Schibel reiterated his objection that the evidence did not support instructing on licensee status and STCU repeated its objection that the evidence did not support instructing on invitee status. No other objections to the invitee and licensee instructions were raised.

The jury returned a verdict in favor of STCU. Mr. Schibel timely moved for reconsideration and a new trial, rearguing that his status as invitee or licensee should not have been submitted to the jury. He also complained that during closing argument, the lawyer for STCU misstated the law. The motions were denied.

Mr. Schibel appeals.

ANALYSIS

Mr. Schibel assigns error to (1) the denial of his motion for partial summary judgment, (2) the trial court's instruction 14, stating that a licensee is owed no duty with respect to dangerous conditions of which the licensee can be expected to have

No. 35977-8-III
*Schibel v. Spokane Teachers Credit Union*

knowledge, (3) defense counsel's allegedly misleading argument to the jury, and

(4) allegedly outdated tort standards contained in the court's instructions on comparative

fault.

Before the date for hearing this appeal, we directed the parties to submit

supplemental briefing addressing whether appellate review of the trial court's denial of

summary judgment was available after trial. For reasons we explain, we reframe Mr.

Schibel's first assignment of error to address the trial court's instructions rather than its

denial of summary judgment.

I.     THE TRIAL COURT DID NOT ERR IN REFUSING TO INSTRUCT THE JURY SOLELY ON
       INVITEE STATUS

While Mr. Schibel seeks to have us review the trial court's denial of partial

summary judgment, the "denial of summary judgment cannot be appealed following a

trial if the denial was based upon a determination that material facts are in dispute and

must be resolved by the trier of fact." *Johnson v. Rothstein*, 52 Wn. App. 303, 304, 759

P.2d 471 (1988). In that case, "the losing party must appeal from the sufficiency of the

evidence presented at trial, not from the denial of summary judgment." *Adcox v.*

*Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 35 n.9, 864 P.2d 921 (1993).

The rule is supported by policy (we favor the decision that is based on the best record)

and by the purpose of summary judgment (the objective of avoiding useless trials is no

longer served once trial takes place). *Johnson*, 52 Wn. App. at 306-07. Only if a trial

court's summary judgment decision incorrectly resolved what was solely a substantive

issue of law can it properly be raised on appeal. *Univ. Vill. Ltd. Partners v. King County*,

106 Wn. App. 321, 324, 23 P.3d 1090 (2001).

In this case, the parties agreed at the summary judgment hearing that the material

facts were undisputed, but the trial court disagreed.

The trial court's instruction 11 and instruction 13 define when a person is an

invitee and when a person is a licensee:

> An invitee is a person who is either expressly or impliedly invited
> onto the premises of another for some purpose for which the premises are
> held open to the public.

CP at 425, and

> A licensee is a person who goes upon the premises of another, with
> the permission or tolerance of the owner but either without any invitation,
> express or implied, or for some purpose not connected with any business
> interest or business benefit to the owner.

CP at 427.

Mr. Schibel's summary judgment briefing argued that binding admissions by

STCU's agents established that Mr. Schibel and other Chairs' patrons "were viewed as

potential customers, or even customers of STCU . . . and thus were business invitees as a

matter of law." CP at 15. We disagree. The testimony of STCU's CR 30(b)(6) designee

on which Mr. Schibel relied was provided in response to a question about why, if parking

in the STCU parking lot by Chairs' patrons had been a problem, STCU had not towed

cars or made a written demand on Chairs that its patrons not use the lot. The witness responded:

> We're a community relations business. We're not going to tow someone's car in the chance that they might be a member one day or maybe they are a member. What if that's a member who decided to go to Chairs and get coffee. We're not going to tow the car. We went to the owner several times, we felt like it was his responsibility to tell his patrons where to park, and then the best we could, we managed that situation.

CP at 29-30. The testimony of the second STCU agent on which Mr. Schibel relied for summary judgment—STCU's former facilities manager—came in response to a question about the limited amount of signage STCU had used to deter parking in its lot. The witness answered:

> The sign as shown is—would only be visible to people exiting the parking lot from the drive-up window onto Indiana. And much to the dismay of [STCU's lawyer] here, I am not a fan of signs that say, "No Parking Except For Customers," and I lobbied against them. Being a member of the community, we look at everybody as either members or potential members and don't want to fuss with anybody over somebody parking in the parking lot.
> However, I did have the required signs for towing a vehicle away in case somebody abandoned a car in the parking lot, as I was aware that you cannot tow a car away unless you have it posted. Something about liability to the towing companies or something.
> So, this is a faded sign, I will agree with you. It says, "Customer Parking," and it's hard to read.

CP at 38-39.

Reasonable jurors could find from this evidence that Mr. Schibel and other Chairs' patrons were permitted or tolerated to park in the STCU lot, rather than being impliedly

invited to park there. The trial court denied Mr. Schibel's motion for partial summary judgment because the jury could reasonably find that he was a licensee. Accordingly, the denial of summary judgment is not appealable.

At trial, Mr. Schibel objected to the court instructing on licensee status, so the giving of those instructions *is* appealable. But because the evidence at trial was similar to the deposition testimony, the trial court did not err. At trial, the STCU employee who had served as its CR 30(b)(6) designee was asked the following questions and gave the following answers:

> Q. [Mr. Schibel] had permission to park in that lot?
> A. Not from STCU.
> Q. Okay. And STCU didn't have any readable signs up?
> A. That's been confirmed.
> Q. STCU felt that, if people were allowed to park in that lot, that they may, at some time, become potential customers—potential members?
> A. I guess, if I may, I—I think what STCU did, is they tolerated people parking in our parking lot, after our business hours, at the potential of them becoming a member.
> I think your question originally was, did we tow cars. And, no, sir, we didn't tow cars in the middle of the night.

Report of Proceedings (RP) at 72.

STCU's former facilities manager was asked the following questions and gave the following answers:

> Q. Okay. And you knew that Chairs was using—sometimes Chairs members would use, during certain gatherings, the STCU parking lot?
> A. That's hearsay to me. I was told that there was some parking by Chairs, either employees or customers, in that area.
> Q. And that was allowed, was it not?

A. It wasn't allowed or encouraged, no. It was—the signs around the parking lots in general say "member and"—"staff and member parking."

. . . .

Q. Was [Mr. Schibel] doing—the question is really, really basic. Was he doing anything wrong by parking in STCU's parking lot, in your view?

[DEFENSE COUNSEL]: Your Honor, I think it does call for a legal conclusion. Perhaps it could be rephrased.

THE COURT: I think as phrased it's permissible, and I'm going to overrule the objection. "In your view."

THE WITNESS: He'll probably come in here. But I spoke with the tenant or owner—I'm not sure which he was—of Chairs and told them that there was a complaint about using that parking lot and asked them not to do so.

Q. [PLAINTIFF'S COUNSEL]: Okay. And did you put up any signs?

A. No additional signs to the ones that were there.

Q. And isn't it true that parking was a—if people parked there, they were viewed as potential STCU customers?

A. STCU likes to think of everybody in the community as either members or potential members.

RP at 101-03.

Reasonable jurors could find from the trial evidence that Mr. Schibel and other Chairs' patrons were permitted or tolerated to park in the STCU lot, rather than being impliedly invited to park there. Because the defense was entitled to have the jury instructed on licensee status, Mr. Schibel's objection was properly overruled.

9

II.     MR. SCHIBEL'S REMAINING ASSIGNMENTS OF ERROR WERE NOT PRESERVED

A.      Challenge to instruction 14

Mr. Schibel next argues that the trial court's instruction 14, stating the duty owed a

licensee, misstated the law.  The instruction—a Washington pattern instruction—states:

> An owner of premises owes to a licensee a duty of ordinary care in
> connection with dangerous conditions of the premises of which the owner
> has knowledge or should have knowledge and *of which the licensee cannot
> be expected to have knowledge*.  This duty includes a duty to warn the
> licensee of such dangerous conditions.

CP at 428 (emphasis added); *see also* 6A WASHINGTON PRACTICE: WASHINGTON

PATTERN JURY INSTRUCTIONS: CIVIL § 120.02.01, at 5 (6th ed. 2012).  He takes issue

with the "cannot be expected to have knowledge" language, pointing out that the

*Restatement (Second) of Torts* § 342 (1965) speaks of the licensee "not know[ing] or

hav[ing] reason to know"—language he contends has a different meaning.  Appellant's

Br. at 26.  As STCU points out, Mr. Schibel did not take specific exception to that

language at trial, nor did he propose his own instruction on the duty owed to a licensee.

CR 51(f) governs the manner for preserving an objection to the trial court's

instructions to the jury:

> Counsel shall . . . be afforded an opportunity in the absence of the jury to
> make objections to the giving of any instruction and to the refusal to give a
> requested instruction.  The objector shall state distinctly the matter to which
> counsel objects and the grounds of counsel's objection, specifying the
> number, paragraph or particular part of the instruction to be given or
> refused and to which objection is made.

10

"The purpose of this rule is 'to clarify . . . the exact points of law and reasons upon which counsel argues the court is committing error about a particular instruction.'" *Walker v. State*, 121 Wn.2d 214, 217, 848 P.2d 721 (1993) (alteration in original) (quoting *Stewart v. State*, 92 Wn.2d 285, 298, 597 P.2d 101 (1979)). This allows the trial court to correct mistakes in instructions and avoid the unnecessary expense of a new trial. *Trueax v. Ernst Home Ctr., Inc.*, 124 Wn.2d 334, 339, 878 P.2d 1208 (1994). "'The pertinent inquiry on review is whether the exception was sufficient to apprise the trial judge of the nature and substance of the objection.'" *Walker*, 121 Wn.2d at 217 (quoting *Crossen v. Skagit County*, 100 Wn.2d 355, 358, 669 P.2d 1244 (1983)).

In stating objections and exceptions to the proposed jury instructions, Mr. Schibel's lawyer's only statement that could constitute an objection to instruction 14 was this:

> The final objection, for the record, Your Honor, we do object to the inclusion of "licensee" as an instruction in this case. We preserve our right to appeal the issue of licensee on those grounds. I—and I believe we've had a sufficient discussion for weeks about this issue. The plaintiff submits their continuing objection based upon all of the previous motions and citations and argument that we've had in this trial.

RP at 482. In his reply on appeal, Mr. Schibel points to *written* objections he had filed prior to the CR 51(f) process in which he generally opposed the giving of instructions on licensee status, stating that a plaintiff should not have to "'anticipate the defendant's

11

negligence'" or "'assume[ ] a risk he was not aware of,'" or "'keep [his] eyes cast on [his] feet.'" Appellant's Reply Br. at 7.

A party does not "distinctly" state the matter to which it objects as required by CR 51(f) by telling the court it relies on "all of the previous motions and citations and argument that we've had in this trial." RP at 482. And even if it could, the written submissions that Mr. Schibel points to in his reply were insufficient to apprise the court of his position that the "cannot be expected to have knowledge" language was in error and should be replaced by "not knowing or having reason to know." The issue was not preserved.

B.      Challenge to closing argument

Mr. Schibel next argues that STCU misled the jury during closing argument. This is based in part on his contention that *all* argument from instruction 14 misstated the law because the instruction itself misstated the law. We have already held that this argument was not preserved.

He also objects to the highlighted statement made in the following argument by STCU's counsel:

> If he's not an invitee but a licensee—and he clearly meets this definition, ladies and gentlemen—that changes the standard of care. The duty that is owed by STCU to Mr. Schibel depends on his status. And I know it seems strange that the status of a person might make that difference, but that's crucial in this case.

> Put up number 12 really quickly. Because if he's an invitee, includes the duty of ordinary care to maintain the property in a reasonable, safe condition that they're invited to use. If that was the standard, it would be a different issue. But even then, reasonably safe condition, and the testimony in this case is that the wheel stop was reasonably safe because it was lit, it was contrast, and it was used for a legitimate purpose. But you only get to this if you find him an invitee, which he's not.
>
> He was tolerated and his presence was tolerated, so he's a licensee. And if you put up the standard for licensee, please. *Totally different standard. May sound strange again, but if he is a licensee, it's not a duty of reasonable care any longer.* It's a duty of ordinary care in connection with dangerous conditions. It has to be a dangerous condition, ladies and gentlemen, in order for it to be something, first off, that even applies. Now the testimony is that wheel stops can be a trip hazard if they are used improperly, if they are not lit, if they are not contrasted. But otherwise, they are not dangerous. How do we know that? Because anything could be a trip hazard. The stairs up to the witness stand can be a trip hazard. Does that make them a dangerous condition? No, it doesn't.

RP at 546-48 (emphasis added). Mr. Schibel argues that the highlighted language told jurors that "ordinary care" is a "totally different standard" than "reasonable care," which is wrong—ordinary care and reasonable care refer to the same thing.

That is not our understanding of defense counsel's argument; instead, he was telling jurors that maintaining property in a reasonably safe condition (the duty owed an invitee) is a "totally different standard" than exercising ordinary care in connection with dangerous property conditions (the duty owed a licensee). More importantly, Mr. Schibel did not raise this objection during the closing argument. The issue is not preserved. *See*

*Bryant v. Dep't of Labor & Indus.*, 23 Wn. App. 509, 515, 596 P.2d 291 (1979).

13

No. 35977-8-III
*Schibel v. Spokane Teachers Credit Union*

C. Washington's law of comparative fault

Finally, Mr. Schibel asks us to reject common law distinctions in the duty of care that a land possessor owes to others, and to adopt the approach of *Rowland v. Christian*, 69 Cal. 2d 108, 443 P.2d 561, 70 Cal. Rptr. 97 (1968). We recognize that if raised in the trial court, this argument would have been lost, given controlling precedent. *See Younce v. Ferguson*, 106 Wn.2d 658, 665-66, 724 P.2d 991 (1986); *cf. Beebe v. Moses*, 113 Wn. App. 464, 468-72, 54 P.3d 188 (2002) (Sweeney, J., concurring). That does not excuse the failure to raise it in the trial court, however. The argument was not preserved. *See* RAP 2.5(a).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Siddoway, J._
Siddoway, J.

WE CONCUR:

_Lawrence-Berrey, C.J._
Lawrence-Berrey, C.J.

_Pennell, J._
Pennell, J.

14