IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PALMER D. STRAND, | ) | No. 36697-9-III |
| PATRICIA N. STRAND, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON BOARD OF | ) | |
| TAX APPEALS, SPOKANE COUNTY, | ) | |
| SPOKANE COUNTY ASSESSOR, | ) | |
| | ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, J. — Palmer and Patricia Strand appeal after the Spokane

Superior Court affirmed the Board of Tax Appeals (BTA) assessed valuation of their

residential property. We also affirm the BTA.

FACTS

The Strands own Parcel No. 173559014, located on West Charles Road in Nine

Mile Falls, Washington. The property is five acres of high-bank waterfront property

located above the Spokane River. The Strands built their home on this property in 2002.

The home consists of three bedrooms and two baths, with 2,048 square feet of living area

on the main floor and a 2,048 square foot walkout basement, of which 1,900 square feet is finished. There is a 1,200 square foot shop building, access to the shore down a winding steep trail, and a dock.

In 2015, the Spokane County Assessor (Assessor) assigned a total property value of $367,700 for the Strands' property. This assessment allocated a value of $175,000 for land and $192,700 for improvements. The Strands appealed this valuation to the Board of Equalization (BOE), contending their property should be valued at $306,397. The BOE heard their claim on February 29, 2016, and affirmed the Assessor's valuation.

The Strands then appealed the BOE's decision to the BTA. This time, the Strands contended their property tax valuation should be $325,000.

In 2017, the Assessor assigned a total property value of $366,000 for the Strands' property. This allocated $150,000 for land and $216,000 for improvements. Instead of appealing this valuation to the BOE, the Strands petitioned for direct review of the 2017 valuation to the BTA. The BTA accepted the direct appeal. The Strands contended their property should have been valued at $325,000. The Strands moved to consolidate the two BTA appeals, and the BTA granted the motion.

The BTA held a telephonic, de novo hearing on May 10, 2018. The only issues before the BTA were the 2015 assessed valuation and the 2017 assessed valuation.

No. 36697-9-III
*Strand v. Tax Appeals Bd.*

The Strands supported their argument with the sales of seven parcels, five of which the Assessor also used to support their position. The two different parcels are summarized:

1. Parcel No. 273239054, 15024 North Tormey Road. It is 5.76 acres and sold on January 23, 2014, for $250,000. It contained two structures—a water well and power. Among other reasons, the Strands contend this property is superior to theirs because of its low-bank waterfront. The Assessor pointed out that the property had no usable well, only public water.

2. Parcel Nos. 173639043 and 173639044 located near 12312 West Charles Road. These parcels are adjacent, total 10.41 acres, and included improved structures. The parcels sold in October 2015 for $400,000. The Assessor countered by showing one parcel had no water access, and the other had a steep narrow driveway to the shore. The "improved structures" were in distressed condition.

*See* Administrative Record (AR) at 357, 1090-91. The Strands also supported their position with Marshall and Swift cost tables[1] that showed a decreased value of their property. The Strands proffered property record cards[2] to demonstrate variations, inaccuracies, and incomplete information between properties and property record cards

---

[1] Most assessor offices throughout the United States and Canada use Marshall and Swift cost tables, including the Spokane County Assessor. Marshall and Swift cost data and methodology is the standard for determining the estimated value of commercial and residential structures, improvements and manufactured housing when using the cost approach.

[2] A property record card contains a parcel number, parcel address, inspection date, and property valuation for a specific property. *See Strand v. Spokane County*, No. 36538-7-III, slip op. at 3 (Wash. Ct. App. Dec. 12, 2019) (unpublished),

3

year to year, including the misclassification of the Strands' basement as a "'part lower level and part basement.'"[3] Clerk's Papers (CP) at 31.

The Strands contended that the superior court's decision in Docket 13-179, which set the valuation of their property at $325,000 for 2013 tax purposes, controlled the Assessor's valuations for 2015 and 2017. They argued that this decision is essentially res judicata and controlled their property tax valuations for future years.

The Assessor prepared a list of comparable sales to defend their 2015 valuation of the Strands' property. When the Assessor examines comparable sales to value a property, it considers the condition of the structures, size of the lot, the degree of finish, outbuildings, waterfront, and shore access. If the Assessor determines the comparable sale property is superior to the property being valued, the superior property will have a net adjustment down. Likewise, comparable properties that are inferior will adjust up.

The Assessor used these comparable properties to value the Strands' parcel in 2015:

---

http://www.courts.wa.gov/opinions/pdf/365387_unp.pdf.

[3] The Assessor successfully argued that the nomenclature the Strands used to refer to the walkout basement resulted in a $3,400 total value difference—less than 1 percent of the entire overall value of their property.

1. Parcel No. 171720118 consists of 2.3 acres, high-bank, waterfront property. It was constructed in 1968 and remodeled in 2010, is of average-minus quality, and has 2,300 square feet of living area. It sold in October 2014 for $365,000. The Assessor made net adjustments of 6.3 percent for inferior characteristics to reach an adjusted sale price of $388,100.

2. Parcel No. 172019025 consists of 1,409 square feet of living area with 1,320 square feet of finished basement for 2,739 square feet of total living area. It is not waterfront but it is a view property. It was constructed in 2000 and sold in March 2014 for $332,500. The Assessor made a positive adjustment because of its smaller above-grade living area and superior quality to reach an adjusted sale price of $382,400.

3. Parcel No. 173559012 consists of 5.5 acres, waterfront, high-bank property, with shore access via an all-wheel drive vehicle. The site is superior to the Strands'. The home has 1,300 livable square feet above ground with 520 square feet of finished basement for a total livable are of 1,820 square feet. It was constructed in 1977 and has had no updates. It sold in late 2012 for $345,000. The Assessor made a net adjustment of 10.2 percent for inferior improvements to reach an adjusted sale price of $380,200. It sold again, without any updates, in October 2017 for $405,000.

4. Parcel No. 172019036 consists of 10.5 acres of high-bank, waterfront property, with shore access via an all-wheel drive vehicle. The home has 1,775 square feet of livable area above ground and 1,330 square feet of finished basement for a total living area of 3,105 square feet. It was constructed in 1992, remodeled in 2010, and is of good-minus quality. It sold in June 2015 for $452,500. The Assessor made a negative 13.2 percent adjustment due to the superior quality, recently updated, and for the date of the sale to reach an adjusted sale price of $392,900.[4]

---

[4] This parcel is also included in the Assessor's comparable sales for the Strands' 2017 valuations. Its sale price of $452,500 in June 2015 was adjusted negative 6.3 percent to reach an adjusted sale price of $424,100.

*See* CP at 370-72; AR at 358-59.  The Assessor used these comparable properties to

defend their 2017 valuation of the Strands' property:

1. Parcel No. 173529007 consists of 6.4 acres of high-bank, waterfront property.  The home was built in 1976 and has 1,264 square feet of above grade living area and 1,264 square feet of finished basement for a total living area of 2,528 square feet.  It has water access through another parcel.  It sold in December 2016 for $403,000.  The Assessor made a negative $900 total adjustment because it was overall similar to the Strands'.  It is superior because it is a larger plot, it has a finished basement, an attached garage, an outbuilding, and superior waterfront improvements and access.  On the other hand, the home is older and smaller.[5]

2. Parcel No. 173529019 consists of 5.1 acres of high-bank, waterfront property.  The home has 1,767 square feet of above-grade living area and 1,178 square feet of finished basement for a total living area of 2,945 square feet.  It has a foot path to access its dock.  It was constructed in 2004 and sold in September 2016 for $499,900.  Due to the superior quality in craftsmanship compared to the Strands' home and the superior waterfront access, the Assessor made a negative 9.4 percent adjustment to reach an adjusted sale price of $452,900.

3. Parcel No. 173529021 consists of 5.2 acres of high-bank, waterfront property.  The home was constructed in 1996 and has 2,418 square feet of livable area above grade and 1,200 square feet of finished basement for a total living area of 3,618 square feet.  It has no waterfront access.  It sold in August 2017 for $450,000.  The Assessor made a negative 10 percent adjustment to reach an adjusted sale price of $405,100.

*See* CP at 374-83; AR at 359-60.

---

[5] The Strands used this comparable sale, as well as those for Parcel Nos. 173529019 and 173529021.

Beyond the comparable sales, the Assessor presented evidence that beginning in late 2015, the Spokane area saw an improving real estate market. Across Spokane County, the Assessor used a 6 percent annualized increase in home prices. The Assessor demonstrated that Parcel No. 173559012, which sold in 2012 and again in 2017, without any updates, increased in value by a 3.4 percent annualized appreciation rate. The Assessor then conservatively used a 3 percent annualized appreciation rate for the comparable sales in the Strands' area.

The Assessor also refuted much of the Strands' evidence. First, the Assessor noted that the Strands used outdated Marshall and Swift cost tables, and the Strands made many omissions and errors in their calculations. The Marshall and Swift cost tables the Strands used explicitly stated they were obsolete after 2008. Moreover, the Assessor noted that the Strands did not calculate the above-grade living area separately, they omitted an energy adjustment for climate, they did not include any floor coverings, they misstated the total fixtures in the home, and they miscalculated the basement cost.

The BTA issued a decision that upheld the Assessor's 2015 and 2017 valuations of the Strands' property. The BTA issued written findings of fact and conclusions of law consistent with the aforementioned facts. It concluded that the Strands failed to meet their statutory burden of providing clear, cogent, and convincing evidence that the

7

Assessor overvalued their property. The BTA also addressed the Strands' res judicata

argument. It recognized that Docket 13-179 directed it to "'consider its decision in

Docket No. 13-179, and its contents, as relevant evidence in any pending appeal.'"

AR at 355 n.1. The BTA considered Docket 13-179, including the two comparable sales

submitted by the Strands in that case that resulted in their favor.

On October 1, 2018, the Strands requested judicial review of the BTA's decision

by the Spokane County Superior Court. The Spokane County Superior Court affirmed the

BTA's decision, determining that it was not contrary to law and that it was supported by

substantial evidence in the record. The Strands filed a motion for reconsideration, and the

superior court denied the motion.

The Strands timely appealed to this court. The only issues before us involve the

Assessor's 2015 and 2017 valuations of the Strands' property.[6]

## ANALYSIS

BTA'S DECISION

When the BTA renders a decision pursuant to a formal hearing, we review the

BTA's decision under the Administrative Procedure Act (APA), chapter 34.05 RCW.

---

[6] The Strands argue at length about the procedure and results of Docket 13-179. That case was decided and final years ago. We will not review any arguments related to it.

RCW 82.03.180. Under RCW 34.05.570(3), judicial relief is available under nine circumstances. We categorize the Strands' arguments as falling under RCW 34.05.570(3)(a), (c)-(e). Those subsections permit us to grant relief if we determine that:

> (a)  The order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied;
>  . . . .
>
> (c)  The agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure;
>
> (d)  The agency has erroneously interpreted or applied the law;
>
> (e)  The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review . . . .

"The burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a). When reviewing an agency order or decision, this court applies "the standards of RCW 34.05 directly to the record before the agency, sitting in the same position as the superior court." *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 136 Wn.2d 38, 45, 959 P.2d 1091 (1998); *see also Tri-City R.R. Co. v. Wash. Utils. & Transp. Comm'n*, 194 Wn. App. 642, 650, 377 P.3d 282 (2016).

The Strands devote much of their briefing to assert the Assessor engaged in unlawful procedures or decision-making processes. RCW 34.05.570(3)(c). The Strands argue the Assessor's valuations of property in Spokane County violate appraiser performance conditions because of inconsistencies in the property record cards, the Assessor omitted aspects of valuations, and these errors and misrepresentations resulted in false reports. We do not comment on these allegations, but recognize that RCW 34.05.570(3)(c) permits us to only grant relief when "[t]he *agency* has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure." (Emphasis added.) "Agency" means

> any state board, commission, department, institution of higher education, or officer, authorized by law to make rules or to conduct adjudicative proceedings, except those in the legislative or judicial branches, the governor, or the attorney general except to the extent otherwise required by law and any local governmental entity that may request the appointment of an administrative law judge under chapter 42.41 RCW.

RCW 34.05.010(2). Because this subsection applies to actions and decisions of the BTA, not the Assessor, and the Strands do not construct an argument as to how the BTA engaged in unlawful procedures or decision-making processes, we dismiss this argument.

We review challenges under subsections (a) and (d) de novo. *See Darkenwald v. Emp't Sec. Dep't*, 183 Wn.2d 237, 244, 350 P.3d 647 (2015) (issues of law are reviewed de novo); *see also Spokane County v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 176 Wn. App.

555, 564-65, 309 P.3d 673 (2013).  Again, the Strands make many arguments as to how the Assessor violated their constitutional rights and how the Assessor violated the law.  Because we review the *agency's* decision, we do not address these arguments.  The Strands contend the BTA erroneously applied the law because it did not find that Docket 13-179—which found their property valued at $325,000—controlled the outcome of the 2015 and 2017 valuations.

Docket 13-179 was the Strands' successful appeal of their 2013 property tax valuation.  The superior court set their property value at $325,000 and ordered the BTA and BOE to "'consider its decision in Docket No. 13-179, and its contents, as relevant evidence in any pending appeal.'"  AR at 355 n.1.  The BTA did just that.  The superior court's decision was not controlling; it merely directed the BTA to consider the evidence as relevant.  The BTA carefully considered Docket 13-179, including the two comparable sales submitted by the Strands as evidence in the Strands' favor in their appeal.

The Strands also contend the BTA misinterpreted the law because the constitutional right of uniformity of taxation required the BTA to find their land property value to equal $150,000.  The Strands argue that because the trial court in Docket 13-179 found their land property value to be $150,000, and there have been no comparable sales

11

of raw land since then, uniformity of taxation requires their land's assessed value to be

$150,000. We are unpersuaded by this argument.

When determining constitutional equity, a tax is uniform if the assessment ratios of

the properties at issue are equal. *Univ. Vill. Ltd. Partners v. King County*, 106 Wn. App.

321, 325, 23 P.3d 1090 (2001). "'An "assessment ratio" is the fractional relationship an

assessed value bears to the market value of the property in question' (e.g., if one property

is assessed at 80 percent of fair market value, then similar properties must also be valued

at the same percentage)." *Id.* "'If the basis of valuation is the true market value of the

property, then that basis must be applied to all alike. If the basis is a certain per cent of

the true market value, the same percentage must be applied to all alike.'" *Welch Foods,*

*Inc. v. Benton County*, 136 Wn. App. 314, 326, 148 P.3d 1092 (2006) (internal quotation

marks omitted) (quoting *Inter Island Tel. Co. v. San Juan County*, 125 Wn.2d 332, 335,

883 P.2d 1380 (1994)).

The Strands never alleged, nonetheless proved, that the Assessor used a different

valuation percentage for their property than others. Their argument is easily defeated by

RCW 84.04.030; "assessed value" is "the aggregate valuation of the property subject to

taxation." Taxes are imposed on property as a whole, not just individual parts of it. Even

*if* the Assessor misvalued the land portion of the Strands' property, we conclude below

that the Assessor supported the *overall* valuation of their property with substantial and sufficient evidence.

Finally, the Strands challenge the BTA's decision as not being supported by the evidence. They argue they met their burden to provide clear, cogent, and convincing evidence that the Assessor's valuations were erroneous. We review challenges under RCW 34.05.570(3)(e) for substantial evidence, determining whether there exists "'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" *City of Redmond*, 136 Wn.2d at 46 (quoting *Callecod v. Wash. State Patrol*, 84 Wn. App. 663, 673, 929 P.2d 510 (1997)).

The BTA's decision is well supported by the evidence. The Assessor provided eight different comparable sales for the Strands' 2015 and 2017 valuations. In using these comparable sales, the Assessor considered the size and features of the lot, any structures and their conditions, the degree of finish on the structures, and waterfront or shore access. After considering all of these factors, the Assessor determined whether the comparable was superior or inferior to the Strands' property, and then adjusted the sales price of the comparable accordingly. This adjusted sales price gave the Assessor a predictive value for the subject property. The Assessor's eight comparable sale properties all had a higher adjusted sales price than the Strands' 2015 or 2017 valuations.

Furthermore, the Assessor presented evidence that the Spokane area saw an improving real estate market of up to 6 percent annually. One parcel in the Strands' neighborhood, which sold twice in five years, showed a 3.4 percent annual increase in value. The Assessor used a very conservative 3 percent annual appreciation rate for comparable sales in the Strands' neighborhood.

The Strands focused on the Assessor's variations in the property record cards' nomenclature of their walkout basement. The Assessor conceded, that even if they adopted the Strands' preferred nomenclature, the valuation would change by $3,400— less than 1 percent.

The Strands' did not meet their burden to provide clear, cogent, and convincing evidence that the Assessor's valuations were erroneous. The Strands relied on Marshall and Swift tables that supported a $325,000 valuation. However, the Assessor demonstrated that these tables were outdated and obsolete after 2008 or 2009. The Assessor showed that the Strands' self-calculations were seriously flawed because they omitted many important factors that go into valuations.

The Strands' proffered comparable sales—most of which the Assessor also used and had an adjusted sales price above the Strands' 2015 and 2017 valuations. Of the comparable sales that were different, the properties were not comparable because they

were raw land sales or so dissimilar to the Strands' property as to be incomparable. The Strands' argued these raw land sales show the value of their land to be $150,000, but the Strands misconstrue the law. The law examines the *total* value of property—land and improvements. *See* RCW 84.04.030; *Univ. Vill. Ltd. Partners*, 106 Wn. App. at 326-27.

We conclude sufficient evidence supports the BTA's decision upholding the Assessor's 2015 and 2017 valuation.

MOTION FOR RECONSIDERATION AND PRA REQUEST

The Strands assign error to the superior court's denial of their motion for reconsideration, and the BOE's failure to order the Assessor to respond to the Strands' PRA request.

Because the Strands do nothing more than assign error to the former, we will not review it. RAP 10.3(a)(6) requires an appellant's brief to contain "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." *See Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 348, 308 P.3d 791 (2013) ("We decline to address arguments unsupported by citation to authority or argument.").

No. 36697-9-III
*Strand v. Tax Appeals Bd.*

As to the latter, our review is limited under RCW 34.05.570. The BTA addressed the Strands' property valuations for 2015 and 2017—it did not address a PRA request. Because the BTA did not hear this issue, it is outside the scope of our review.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Korsmo, A.C.J.

Siddoway, J.

16